[Amy & Co. v. Selma.]

# Amy & Co. *v.* Selma.

# Amy & Co. *v.* Gill *et al.*

*Action on Judgment, against Successor of Dissolved Munici-
pal Corporation ; and Bill in Equity by Statutory Com-
missioners, against Creditors of Dissolved Municipal Cor-
poration, for Administration of Assets and Settlement of
Trust.*

1. *Dissolution of municipal corporation ; effect on existing debts and
liabilities.*—The act of the General Assembly approved December 11th,
1882, entitled " An act to vacate and annul the charter, and to dissolve
the corporation of the city of Selma, and to provide for the application
of the assets to the payment of the debts thereof " (Sess. Acts 1882-3,
pp. 221–32), operated a dissolution of said municipal corporation, and
withdrew from it all governmental power, except so far as the continued
exercise of such power was thereby specially authorized; but, as to the
debts and liabilities then existing against said corporation, said act was
without any legal operation whatever, their obligation being neither
extinguished nor lessened thereby.

2. *Same ; appointment of trustees for administration of assets, with
power to file bill in equity.*—Said act is not objectionable, in authorizing
the appointment of commissioners by the governor, and conferring on
them power to take charge of and collect the assets of the dissolved cor-
poration, and apply them as by law required; nor in authorizing said
commissioners to file a bill in equity in the City Court of Selma, for the
instructions and protection of said court in the performance and dis-
charge of their duties; nor in conferring jurisdiction of the case on that
court, nor in the mode of procedure prescribed.

3. *Same ; effect of act in taking governmental power from people.*—Said
act does not contemplate a deprivation, permanent or temporary, of the
people residing within the territorial limits of said corporation, of the
power of local government as they had been accustomed to exercise it,
nor a suspension or cessation of such government for any appreciable
period of time; but, on the contrary, plainly contemplates the creation
of another municipal corporation, to which substantially the same people
and the same territory would be subject.

4. *Same ; subsequent act creating new corporation as successor.*—The
subsequent act approved February 17th, 1883, entitled " An act to incor-
porate the inhabitants and territory formerly embraced within the cor-
porate limits of the municipal corporation (since dissolved) styled the
*City of Selma*, and to establish a local government therefor " (Sess. Acts
1882-3, pp. 396–432), is an execution of the intent manifested by said
prior act, and a re-organization of the same corporators and substantially
the same territory; and said new corporation, as the successor of the
old, is bound to the payment of its debts, and the satisfaction of its lia-
bilities.

5. *Same ; parties to bill.*—The new corporation being bound to pay
the debts and liabilities of its predecessor, it is a necessary party to a

bill filed by the statutory commissioners under the provisions of said prior act under which they were appointed.

6. *Same ; action against new corporation, on judgment against predecessor.*—An action at law may be maintained against said new corporation, as the successor of the former, on a judgment recovered against the former before dissolution.

APPEALS from the City Court of Selma, at law and in equity. Tried and heard before the Hon. JONA. HARALSON.

These two cases, which were argued and submitted together, involve a consideration of the constitutionality, construction and effect of the following acts of the General Assembly :

(1.) " *An act to vacate and annul the charter, and dissolve the corporation of the City of Selma, and to provide for the application of the assets thereof to the payment of the debts thereof.*" Approved Dec. 11th, 1882.

SECTION 1. "*Be it enacted*" &c., " That the act of the General Assembly of Alabama, entitled 'An Act to establish a new charter for the *City of Selma*,' approved March 8th 1875, and all acts of a date subsequent thereto, amendatory thereof, and all other acts incorporating the *City of Selma*, under that or any other corporate name, and the act entitled 'An Act to authorize and empower the mayor and council of the *City of Selma* to establish and provide a sinking fund for the payment of the principal and interest of the bonded debt of said city,' approved February 23, 1872, and all other acts in conflict or inconsistent with the provisions of this act, be, and the same are hereby repealed ; and that the corporation of the City of Selma, incorporated, known and styled, as the *City of Selma*, be, and the same is hereby dissolved ; and all offices held under or by virtue of any of said acts, except for the purposes, and during the period hereinafter prescribed, are hereby abolished ; and all power of taxation, in anywise vested in, or exercised by said corporation or its officers, under or by virtue of said acts, or any of them, or otherwise, is forever withdrawn, and is hereby resumed by, and lodged in the legislature of this State ; and all the public buildings, squares, wharves, streets, alleys, cemeteries, parks, fire-engines, hose, carriages, horses, mules, and carts, and all other property, real and personal, hitherto held and used by said corporation, for governmental or other public purposes, and all trust property, and the proceeds of all trust property, held by said corporation upon any trust, are hereby transferred to the custody and control of the State of Alabama; to remain public and trust property, respectively as heretofore, for the uses, and upon the trusts, to which the same has hitherto been held and applied ; and the inhabitants and territory within the territorial limits and jurisdiction

[Amy & Co. v. Selma.]

of said corporation, as hitherto defined, are hereby resolved into the body of the State.

Sec. 2: "That the Governor of this State shall appoint three persons, citizens of the county of Dallas, who shall be known and called the commissioners of the city of Selma, and who shall hold their office for the term of two years, and until their successors are qualified, unless, before the expiration of said term, the duties and business of their office shall have been fully discharged and performed, or unless, before the expiration of their said term of office, their said office be vacated or otherwise discharged by act of the General Assembly of this State. Before entering upon their said office, said commissioners shall each file with the Secretary of State an oath, by them respectively taken and subscribed before the judge of the City Court of Selma (and which shall be entered on the minutes of said court, at rules, or in term time), as prescribed in article fifteen of the constitution of this State, and shall also enter into bond, conditioned for the faithful discharge of the duties of said office, and payable to the State of Alabama, in such an amount, and with such sureties as the judge of said court may prescribe and approve. Should any vacancy occur in said office, the remaining members or member shall certify such vacancies or vacancy to the judge of said court, together with the name or names of a suitable person or persons to fill such vacancy; and if the judge of said court approve such nomination, such person or persons shall be appointed and commissioned by the Governor, and shall qualify for, hold, and execute his or their office in all respects as if originally appointed, as herein first provided. The non-acceptance by any person of his appointment under this act, shall be held and taken to be a vacancy within the meaning of this act. If vacancies occur, and be not certified to the judge of said court, as herein provided, within the period of ten days next after their occurrence, it shall be the duty of the judge of said court, on information of the fact, verified by affidavit of two or more credible citizens, to fill such vacancy by proper appointment; and persons so appointed by the judge of said court, shall qualify for and hold and execute their office, in all respects as if originally appointed, as herein first provided.

Sec. 3: "That said commissioners shall, upon their appointment and qualification, at once enter upon and take possession of all the property, real and personal, which, prior to the passage of this act, in any way belonged to the said city of Selma, and shall also have, demand, receive and collect all the *choses* in action, debts, claims and demands of all kinds, and of every name and nature, including all sums of money for taxes and licenses before the passage of this act lawfully assessed, levied

or laid by or on behalf of the said city of Selma, and which said corporation was, on said last mentioned day, entitled to have, demand, receive or collect, from any person or persons, company or companies, corporation or corporations, property, properties, business or employment or occupation whatsoever, and which were then not paid or otherwise lawfully discharged; and they shall realize and collect all said debts, claims and demands, at as early a date as practicable, and apply the same, and the proceeds thereof, to and for the uses, purposes and objects in this act declared; but nothing in this act contained shall be construed to vest in said commissioners any power or authority to lay or levy any tax or assessment whatever upon any property, polls, business or occupation, or to demand, receive or collect any money, or other thing, from any person, or from any corporation, or from or out of any property or business, except such sum or sums of money as had been lawfully levied, assessed, or laid by or on behalf of the said city of Selma, or had accrued to the same before the date of the passage of this act, and not then paid to said corporation, or collected or otherwise discharged by the authority thereof.

SEC. 4: "That said commissioners shall forthwith prepare, or cause to be prepared, a list and full description of all the debts and liabilities of all kinds which exist against said city of Selma, the nature and consideration of the same, the date thereof, when contracted, and the form and time of maturity thereof, with such information in relation thereto as will fully describe and identify all the debts of said corporation, existing at the date of the passage of this act. They shall also forthwith prepare, or cause to be prepared, full lists and inventories of all the property, rights of property, claims and demands of every kind, including unpaid back taxes due or belonging to said corporation, which may come to their possession or knowledge, so far as to furnish detailed information of all the assets applicable to the payment of the debts of said corporation, and also with said lists and inventories, prepare a statement and description of all the liens, rights and trusts, which may exist or be alleged against or upon said property and assets, or any portion thereof; and it shall be their duty, from time to time, as fuller information may be obtained, to prepare supplemental and amended lists, inventories and statements of the matters and things in this section specified.

SEC. 5: "That it shall be the duty of said commissioners, immediately upon their qualification hereunder, and thereafter, from time to time, as occasion may require, to give notice of their appointment and the purpose thereof, to all persons in possession of any part or portion of the property or assets, with the administration of which they are hereby charged, or

who may be in possession of the books, papers or other evidences of the right or title of said corporation thereto; and thereupon said persons, including the commissioners of the sinking fund aforesaid, shall surrender and deliver all such property and assets, books, papers and evidences, to said commissioners, for the purposes herein declared, or thenceforth hold the same subject to the order of said commissioners. Said commissioners shall give public notice of their appointment and the purpose thereof, and of this act, by publication in such newspapers published in this State or elewhere, or otherwise, as in their judgment is most likely to bring knowledge of the object of their appointment and of this act to creditors of said corporation and other persons interested.

SEC. 6: "That it shall be the duty of said commissioners forthwith, upon their qualification, or as soon thereafter as practicable, by bill or other proper proceeding in chancery, and in manner conformable to the practice in Courts of Chancery, to apply to the said City Court of Selma, upon the equity side thereof, for instruction, direction and protection, in the performance and discharge of their duties as trustees, by this act imposed; and they shall thereupon and thenceforth become and be officers of said court, and receivers of the property and assets hereinbefore described, and charged with the duties and obligations of receivers in chancery; and be in all respects subject to the orders of said court as receivers, and as such shall be entitled to the aid and protection of said court; and from time to time, by petition or other proper application, as they may be advised, may apply to said court for such advice and direction in the discharge of their duties as the nature of the case may require. The lists, inventories and statements hereinbefore required to be prepared by said commissioners shall by them be presented to, and filed in said court; and they shall, at the beginning of each term of said court, and oftener if required, make due report of their acts and doings in the premises, in manner as receivers in Chancery Courts are required to do. Said court may, for good cause, remove said commissioners from office, and by appointment fill the vacancies thereby occasioned; and generally may, from time to time, require of them reports, statements, explanations and accounts, as from other receivers and managers of property and estates, appointed by the court.

SEC. 7: "That it shall be the duty of said City Court of Selma, in the exercise of its equity jurisdiction, to take jurisdiction of the administration and application of the assets of said dissolved corporation, in discharge of the debts of said corporation, herein provided for, as trust property; and to proceed therein and administer said assets as a trust estate, for the

benefit of the parties thereto entitled, according to the rules and practice of Courts of Chancery; and to take such steps and make such orders as may be necessary to bring before said court all parties and persons interested in the subject-matter of such proceedings, and to make them amenable to the jurisdiction of the court; and therein generally to do, act, adjudge and decree as law, equity and justice may require.

SEC. 8: " That said commissioners and receivers shall take, hold and possess all the property, real and personal, and all the rights, claims, demands and assets of the said city of Selma, of which they come into possession as such commissioners and receivers, upon the same trusts, and subject to the same liens, charges and duties, that the same were under in possession of said corporation ; and said commissioners and receivers shall, under the supervision of said court, manage and administer, or rent or let, such of said property, which may come into their possession, as may be capable of yielding income, and shall take care of and preserve such of it as is not capable of yielding income ; and shall make such arrangements as may be necessary and proper, in order that the public and trust property held, used or possessed by said corporation, may continue to be used with due regard to the public health, safety and convenience, and with due regard to the terms of the trust upon which any trust property may be held ; and all surplus funds received by them from the management or use of said property, after payment of the expenses and charges incurred in or about the same, shall be reported to said court, and held and applied, under the direction thereof, to the debts of said corporation, or to the other purposes to which said funds may be properly applicable. But nothing in this act contained shall be construed to make liable to the payment of said debts any property, right of property, or income, which would not be so liable, if this act had not been passed.

SEC 9 : " That it shall be the duty of said commissioners and receivers, to realize as speedily as possible, under the direction of said court, all the available assets of said corporation, which may come into their hands under the provisions of this act; and to this end, they are, subject to the approval of said court, hereby authorized to compromise, compound and adjust all debts, claims and demands, including past-due taxes of every kind, which, at the date of the passage of this act, existed in favor of said corporation, on such terms, and in such manner, as, having in view the speedy collection of the assets of said corporation, and the application thereof to the payment of its debts, may be deemed best; and, to this end, they are further authorized and empowered to sell any or all of the real and personal property, claims and demands which may come to

their hands, as such commissioners, under the provisions of this act, and which is not by existing laws exempt from sale and from the payment of debts, on such terms and conditions, and under such proper safeguards, as said court shall prescribe.

SEC. 10: "That for all the objects and purposes contemplated by this act, the said City Court of Selma shall be held and deemed to be always open, and the presiding judge thereof, sitting as chancellor, in the exercise of the equity jurisdiction of said court, may sit, and make and render the proper orders and decrees for the administration of said trust, and for the guidance and direction of said commissioners and receivers, the same in vacation as in term time, upon notice in accordance with the rules of practice in Chancery Courts; and should any case arise in the premises, not provided for by the ordinary rules of practice, in which it is necessary to give notice to parties in interest and bring them before the court, the judge of said court, sitting as a chancellor, may prescribe the time, terms, and manner of giving such notice.

SEC. 11 : "That all moneys received and collected by said commissioners, shall be deposited by them in some bank or banks in the county of Dallas, to the joint credit of said commissioners as receivers of said court, and shall be paid out only on the check or draft of the commissioners, countersigned by the clerk and register of said court, upon the order of said court made in the premises; but a sufficient sum to meet the current expenses, to be specified by the judge of said court, in an order in that behalf, may be deposited or left in bank, subject to the order of said commissioners.

SEC. 12 : "That said commissioners, immediately upon their qualification, shall take possession of all the books of account, ledgers, journals, cash books, deeds, contracts, books of assessment, and tax books of said corporation, and all books, papers and documents pertaining to the finances thereof, for the purposes of their office, and for the proper discharge of the duties by this act and by the order of said court imposed upon them. They may employ such clerks and assistants as the proper discharge of their duties may require, and at such compensation, to be paid out of collections made by them as such commissioners and receivers, as may be agreed upon, subject to the approval of said court. Such employees may, in the discretion of the said commissioners and receivers, under the instructions of said court, be required to give bond for the faithful performance of their duties, payable to the State of Alabama, in such amount, on such conditions, and with such sureties as said court may direct. Said court shall also fix and determine the amount of compensation to said commissioners and receivers for their services, and the same shall be paid out of collections to be

[Amy & Co. v. Selma.]

by them made from the assets and property of the said trust estate.

Sec. 13. " That for the purpose of collecting said unpaid back taxes, said commissioners and receivers may retain for that service, at their discretion, the person who may, at the time of the passage of this act, hold the office of city tax-collector of said dissolved corporation, or may appoint some other suitable person to aid them in the performance of that duty ; but whoever may be appointed by them for that purpose, shall take the oath required to be taken by said commissioners, to be entered upon the minutes of said court, and must enter into bond with security, to be approved by the court, payable to the State of Alabama, in such amount and conditioned as said court may direct ; and thereupon the person so appointed shall proceed, under direction of said commissioners and receivers, to call in, collect, and enforce the collection of such back taxes as remained unpaid and not otherwise discharged at the date of the passage of this act, and which had heretofore, at any time, been lawfully assessed, levied, or laid by or on behalf of the said city of Selma ; and the machinery and remedies in said acts of incorporation provided for the collection and enforcement of taxes, are hereby retained and continued in full force and effect, for the purpose and to the extent of enabling said commissioners and receivers to collect and enforce the collection of said back taxes. Said collector shall make report to said commissioners of his said collections, as often and in such manner as required by them, and shall deposit the proceeds thereof in the bank or banks which may be designated as the depositories of said commissioners and receivers, as provided in section eleven of this act.

Sec. 14 : " That said commissioners and receivers, at the end of every six months after their qualification, shall make special report to said court of the funds in their possession, and therein show the sources whence the same were derived and collected, and the liens and trusts, if any, existing thereon, and therein also show and exhibit what percentage can be paid on the several and respective classes of debts and liabilities of said corporation ; and thereupon said court may authorize and direct partial payments or dividends on account of said debts and liabilities out of said funds, having regard, however, to the order of payment and appropriation designated in the next succeeding section of this act.

Sec. 15: "That it shall be the duty of said commissioners and receivers, under the supervision and direction of the court, after the payment of the necessary expenses incurred in and about the execution of this trust, and after setting apart and making over to or for the use of the proper public department

or governmental agency of said corporation, or other beneficiary of said fund, the proceeds of any tax or funds in their possession which were lawfully levied for, appropriated to the use of, or held in trust for, or otherwise belonging to such department, agency or beneficiary, to apply the funds by them realized and collected to the payment of the matured floating debt of said corporation in its character and capacity of governmental agency of the State, and to the payment of the other matured debt of said corporation ; always, however, appropriating to the payment of said debts or liabilities the proceeds arising from property, taxes and income, which, before the passage of this act, were lawfully levied, appropriated or pledged to secure the same ; *provided*, that funds arising from taxes, or income, levied or derived for governmental purposes, shall not be applied to the payment of the funded debt of said corporation, and funds arising from taxes or income levied or derived for the payment of said funded debt, shall not be applied to the payment of debts or liabilities incurred for governmental purposes.

Sec. 16 : "That it shall be the duty of said commissioners, without delay, to open communication and conduct negotiations with the holders of the funded debt of said city of Selma, with a view to the settlement and adjustment thereof, and with a view to the enactment thereafter of proper legislation, to secure at the same time, and consistently with each other, the establishment of municipal government for the inhabitants and territory lately included in the said city of Selma, and the payment, to the utmost extent practicable, of the just debts of said corporation. And, to that end, they shall report the result of their negotiations to the Governor of the State, for the consideration of the General Assembly, at its next session, together with a draft of such bill, as, in their judgment, will best carry into effect any plan for the adjustment and settlement of said debts, which may have been agreed upon between the commissioners and said creditors, and secure the other objects herein declared. And upon the passage and enactment of such bill by the General Assembly, said commissioners shall apply to said court for such proper orders and decrees as may be necessary to secure the application of the assets, under its jurisdiction and control, to the uses and purposes which may be so agreed upon, and be declared by the act to carry such agreement into operation and effect ; *provided*, that any *residuum* of funds, raised for governmental purposes, which may remain subject to the jurisdiction and control of the court, shall enure and be paid over to the authorities of any other municipal government, which may be established by law for the inhabitants and territory aforesaid, to be by such other municipal government used and applied for public governmental purposes.

Sec. 17 :  "That this act shall go into effect from and after its passage ; except that the mayor and councilmen of said *City of Selma*, and the agents and officials thereof, shall remain in possession of, and be responsible for, all the books, papers, property and assets of said corporation, hereby dissolved, in their possession, or under their control, respectively, until the same be turned over and delivered to the commissioners appointed and qualified hereunder ; and except also that the said mayor and councilmen shall continue to have and exercise all the police powers, jurisdiction and authority, over the territory embraced within the corporate limits and police jurisdiction of said corporation, hereby dissolved, which were vested in them under the charter and amendments thereto, hereby repealed, until the first Monday in May, A. D. 1883, and until some form of government for the inhabitants and territory embraced in said limits shall have been established by law, and the officers and authorities therein provided for shall have been duly elected and qualified ; and until the time last aforesaid, the mayor of said city, or any councilman, acting as mayor, and the other officers, agents and employees thereof, shall have and exercise, over the territory aforesaid, all the police powers and jurisdiction conferred by said charter and amendments thereto, and the ordinances of said city now of force.  And the said charter and amendments thereto, and the ordinances adopted thereunder, are hereby continued of force and effect, for the period aforesaid, for the purpose of enabling said mayor and councilmen, agents and officials, to exercise such police powers and jurisdiction.  And, for and during the period aforesaid, said mayor and•councilmen shall have power and authority, as heretofore, to impose and enforce fines and penalties for the violation of any of the provisions of said charter, by-laws and ordinances, and said fines and penalties, when enforceable in money, shall be collected by the marshal, and paid over to or for said commissioners, for uses and purposes in this act declared.  But said mayor and councilmen, and other officials, shall have no power or authority to assess, levy or collect any taxes, or license fees, or revenues of any kind, whatever ; *provided*, however, that during the period aforesaid, in any and every case, where under the charter, by-laws and ordinances aforesaid, a license-tax or fee would have accrued and been payable to the *City of Selma*, from any person or corporation, for the carrying on of any business, or doing of any act, such license-tax or fee shall in the same manner accrue and be payable to said commissioners, to be enforced by them as other taxes and dues are enforceable by them ; and the said mayor and councilmen, in the exercise of their said police jurisdiction, shall, for and during the period aforesaid, have power and authority to im-

[Amy & Co. v. Selma.]

pose upon such person or corporation the fines and penalties in said charter, by-laws or ordinances provided, for the failure to pay such license-tax or fee, for the carrying on of such business, or the doing of such act; *provided, further*, that said mayor, and other officials and employees of said city, shall, for and during the period aforesaid, have and receive, to be retained or allowed and paid out of the funds and assets vested in the commissioners herein provided for, the same compensation, and payable monthly, or in the same manner as authorized or provided under said charter, by-laws and ordinances; *provided, also*, that any necessary expenses incurred by the said mayor and councilmen, in the exercise of the said police power and jurisdiction conferred on them, for and during the period aforesaid, shall likewise be allowed and paid out of the fund derived for governmental purposes, accruing to said commissioners.

SEC. 18 : "That nothing in this act contained shall destroy or impair the means or remedies for enforcing the collection of the taxes or license fees heretofore imposed, assessed or levied by or on behalf of said *City of Selma* for the current tax year, or for any year prior hereto ; but the same shall be collected by the said tax-collector, under the direction and control of said commissioners and receivers, as hereinbefore provided ; and no proceeding, begun or pending at the date of the passage of this act, for the enforcement of any fines or penalties for violation of any of the provisions of said charter, by-laws or ordinances, shall abate or be affected by the repeal aforesaid ; and no right of property or right of action of the said *City of Selma* shall be destroyed, impaired or affected by the passage of this act ; and all such rights of action and of property shall be prosecuted and enforced by said commissioners, in the name of said *City of Selma*, for the uses and purposes herein declared.

SEC. 19 : "That the commissioners herein provided for shall be appointed by the Governor as herein declared, as early as practicable after the passage of this act."

(2.) "*An act to incorporate the inhabitants and territory formerly embraced within the corporate limits of the municipal corporation (since dissolved) styled the ' City of Selma,' and to establish a local government thereof.*" Approved February 17th, 1883.—Sess. Acts 1882–3, pp. 396–432.

(This act consists of 52 sections, the material parts of which only are here set out.)

" *Whereas* the municipal corporation styled the *City of Selma* has been dissolved, and its charter repealed, and the offices held thereunder abolished, and the inhabitants and territory thereof resolved into the body of the State ; and *whereas* it is essential to the preservation of good order, and to the protection of life,

8

liberty and property, that a local government be established for said inhabitants and territory ; therefore—

"SEC. 1. *Be it enacted,*" &c., "That the inhabitants residing within the territorial limits hereinafter designated and prescribed are hereby incorporated and constituted a body politic and corporate, under the name and style of *Selma,* to be governed as hereinafter provided ; and by that corporate name may sue and be sued, plead and be impleaded, grant, receive and do all other acts as natural persons, within the powers herein granted and conferred ; and may purchase and hold property, real, personal and mixed, and dispose of the same for the benefit of said municipality, and may have and use a corporate seal, which may be broken or altered at pleasure.

"SEC. 2. *Be it further enacted,* That the corporate limits and boundaries of the municipality of *Selma,* in the county of Dallas, shall be, and the same are hereby, designated and established as follows ; " prescribing the boundaries substantially as they were under the former corporation ; also conferring police jurisdiction, for certain designated purposes, within certain limits outside of these boundaries, and abating " all prosecutions now pending for the violation of the license ordinances of said *City of Selma.*"

The 3d and 4th sections relate to the division of the city into wards, and authorize the mayor and councilmen to change them at discretion ; and a proviso is added to the 3d section, " that if the boundaries of said wards," as designated therein, "or any of them, were altered by the corporate authorities of the late *City of Selma,* said wards as so bounded and established shall remain until changed by the authorities of the municipality hereby created."

The 5th, 6th, 7th, 8th and 9th sections relate to the election and qualifications of mayor and councilmen, and provide for a registration of voters prior to the first election, to be held on the first Monday in May, 1883 ; and this provision is added to the 9th section :  " That as to and in and about the first election for municipal officers of the corporation hereby created, all and singular the acts, duties, powers and jurisdiction in this act required of, imposed upon, or vested in said mayor and councilmen and other officials, as to such elections generally, shall be performed, discharged and exercised by the mayor, councilmen and other officials of the former municipal corporation, styled the *City of Selma,* since dissolved ; which last mentioned mayor, councilmen and other officials have by law been invested with police powers and jurisdiction over the inhabitants and territory embraced in the corporation hereby created, for the purpose, and during the period therein prescribed."

The 10th section confers on the mayor and councilmen au-

[Amy & Co. v. Selma.]

thority to enact by-laws and ordinances for governmental purposes particularly specified, including the power to impose license-taxes on occupations, " to levy and collect taxes, as prescribed by this act, for defraying the expenses of the city ; . . and to pass all such resolutions, by-laws and ordinances, as they may deem necessary and proper for the good government of the city, not contrary to the laws of the State. And to carry into effect the powers conferred by this charter upon said mayor and councilmen, the by-laws, ordinances and resolutions heretofore passed and adopted by the said municipal corporation styled the *City of Selma*, and which remained of force at the time of its dissolution, are hereby revived and established, as and for the by-laws, ordinances and resolutions of the corporation hereby created, so far as the. same are applicable and are consistent with the limited powers of the corporation hereby created, and are not in conflict with any of the provisions of this act; and the same, thus qualified, are continued of force and effect, until altered or repealed by the municipal authorities of the corporation hereby created : *Provided*, that nothing in said by-laws, ordinances or resolutions contained shall be construed as conferring upon said municipality, or its officers, any power or authority other than as prescribed and set forth in this act."

SEC. 18 :  " That said corporation shall have full power and authority to purchase, and provide for the payment of the same, all such real estate and personal property as may from time to time be deemed necessary and proper for the use, convenience and improvement of the city ; and shall have full power and authority to construct and erect works for the purpose of furnishing water and lights for said city ; and to sell and dispose of any property deemed advisable to sell."

SEC. 19 :  " That said mayor and councilmen may, on the faith and credit of the taxes, licenses, fines and penalties authorized by this act, borrow money from time to time, not exceeding the sum of twenty-five thousand dollars in the aggregate, in order to meet and defray necessary municipal expenses, until a fund for that purpose can be realized from the collection of such taxes, licenses, fines and penalties; and for that purpose said mayor and councilmen are authorized to execute a promissory note or notes on behalf of said municipality, for the amount so borrowed, accompanied by their order or orders addressed to such bank or banks as they may designate as the depository of such taxes, licenses, fines and penalties, and therein direct said bank or banks to apply to the payment of such note or notes so much of the funds deposited or to be deposited with such bank or banks as may be stated in such order or orders."

SEC. 27 :  " That the mayor and councilmen of said *Selma*

shall have the power to levy taxes on real and personal property, capital employed in any business carried on in said city, auction sales and sales of merchandise, gross amounts of commissions, or sums received during the preceding year for each tax-year, by any factor, commission-merchant, broker or buyer; on the gross receipts of each and every business, trade or occupation conducted within, or derived from a business carried on in said city, or partly carried on therein; and on all salaries, whether received from a public or private employment, after deducting the expenses of carrying on such business, trade, occupation or employment. *Provided*, that no tax shall be levied on sales under judicial proceedings. . . *And provided*, also, that no taxes, dues or imports shall be laid, levied, assessed or collected by said mayor and councilmen, or any other officer or agency of the corporation hereby created, upon real or personal property, occupations, sales or salaries, or by way of license, or in any other way, for any other than public municipal purposes, and to enable said corporation to discharge its functions as a governmental agency of the State; and no moneys or funds in any way derived by the corporation hereby created, from taxes, licenses, fines, penalties, or from any other source, shall ever be applied to, or be used or liable for the payment of any of the debts or liabilities created by or existing against the municipal corporation styled the *City of Selma*, lately dissolved and abolished."

Sec. 38 gives power and authority "to impose and collect from all persons or corporations trading or carrying on any business, trade or profession, by agent or otherwise, within the limits of said city, a license-tax on such business, trade, profession or calling, which shall be fixed by ordinance or by-law from time to time;" and a proviso is added, in these words: "*Provided*, also, that in any case where the late corporation, styled the *City of Selma*, may have imposed and collected in advance any tax on property or things, or any license for any of the purposes aforesaid, the corporation hereby created shall have no authority to impose or collect any tax on the same property or thing, or any license for the same calling, from the same person or corporation, for or during the period covered by said former exacted and collected tax or license."

Sec. 44: "That in no case shall the faith of the corporation hereby created be pledged for the payment of money, except to the amount, for the purposes, and by the authority in section 19 hereinbefore provided; and in no case shall the private property of citizens, or any property held and used in trust, or for public municipal purposes, be liable for any debt or obligation of said corporation; and the public and trust property heretofore so held and used by the late corporation styled the *City of*

[Amy & Co. v. Selma.]

*Selma*, and afterwards transferred by law to the custody of the State, is hereby made over to the corporation hereby created, to be held, used and applied to the same public uses and trusts as when held by said former corporation."

Sec. 45 limits the rate of taxation, " on real estate, personal property, income, or other subject of taxation," in any one year, to one half of one per-cent. *ad valorem.*

Sec. 46 confers the power to establish and regulate free schools, and to levy a tax for their support, to be paid over, when collected, "to the superintendent of public schools of the city of Selma"; and further declares, " that all funds received by said superintendent, in pursuance of the business hereof, shall be applied to the support of the public schools of said city, under the direction of the city board of education, in accordance with existing acts, laws, and ordinances."

Another act of the General Assembly at the same session, relating to the same subjects, was brought forward in the pleadings; but, as it is not referred to in the opinion of the court, it is not deemed necessary to state its provisions. It was approved February 19th, 1883, and is entitled " An act to carry into effect any plan or scheme for the compromise, adjustment and settlement of the existing indebtedness of the late corporation known as the *City of Selma*, and the commissioners of the city of Selma appointed under and by virtue of" the act first above set out, approved Dec. 11th, 1882.—Sess. Acts 1882–3, pp. 471–84.

W. B. Gill, H. N. Stewart and Emile Gillman, having been appointed by the governor commissioners under the provisions of said act approved Dec. 11th, 1882, filed their bill in equity, on the 15th January, 1883, in the City Court of Selma, alleging the enactment of said law, the material provisions of which were stated in substance, and their own appointment as commissioners, and asking the instructions and protection of the court in the discharge of their duties, and the settlement of the trust. The bill alleged, also, that the dissolved corporation was indebted to the amount of about $400,000, as evidenced by its bonds with interest coupons attached, which constituted the " funded debt" of said city; that Amy & Co., partners doing business in the city of New York, held and owned a large amount of these bonds, and had recovered a judgment on some of them which were past-due and unpaid, in the Circuit Court of the United States at Montgomery, for $56,000, against said corporation before its dissolution; that J. O. Matthewson & Co., partners residing and doing business in the city of Augusta, Georgia, and the City National Bank of Selma, also held and owned some of said bonds, and the remaining bonds were held

and owned by divers other persons, whose names were unknown to the complainants, and who were too numerous to make their joinder as defendants to the bill practicable; that said incorporation was also indebted, at the time of its dissolution, to other persons, its officers and agents, for salaries, wages, &c., and on liabilities contracted in and about the discharge of its governmental functions, and held certain bonds and moneys in trust for sundry public purposes, and had assessed and levied taxes for the payment of its "funded debt" and other purposes, as by law authorized, in the exercise of its functions as a public municipality; that the complainants, as commissioners, have received, and are entitled to receive under the provisions of said act under which they were appointed, moneys properly applicable to the payment of said indebtedness, as would appear in full by the statements and schedules which they were required to make and file in the court, and which they had not yet completed; and that they could not fully administer the trust committed to them, and discharge the duties imposed upon them, without the instructions, assistance and protection of the court. They therefore prayed that the court would take jurisdiction of the administration of the assets of said dissolved corporation, as a trust estate, under the provisions of said act of Dec. 11th, 1882, and make all necessary orders to render its jurisdiction complete and effectual; that the complainants be declared and held to be receivers of the court, and instructed in the performance of their duties as trustees and receivers; and that the trust might be finally settled, and the rights of all parties adjudicated.

Amy & Co., and the other creditors mentioned, were made defendants to the bill; and it was prayed that the unknown creditors might be brought in as parties by publication, as authorized by the rules of practice of the court. An amended bill was filed on the 2d April, 1883, which alleged the passage of said third act above mentioned, setting out the substance of its material provisions, and asked that the court would assume jurisdiction of the additional trust by said latter act created, and enforce and settle the same as by said act contemplated and intended.

A demurrer to the bills, original and amended, was filed by Amy & Co., assigning the following as grounds of demurrer: (1.) Because the bill shows on its face that the said act approved December 11th, 1882, "was enacted for the purpose, and with the intent and design of impairing the obligation of the contracts of the said *City of Selma*, as evidenced by said bonds in said bill mentioned, by destroying the remedy for the enforcement of said contracts, contrary to the provisions of the constitution of the State of Alabama, and said act is void."

(2.) Because the bill shows that said act of Dec. 11th, 1882, "was enacted for the purpose, and with the intent and design to impair the obligation of the contracts of said *City of Selma,* as evidenced by said bonds in said bill mentioned, by impairing the remedy for the enforcement of said contracts, contrary to the constitution of the State of Alabama, and said act is therefore void." (3.) Because the bill does not show that plaintiffs had any authority to file it at the time the same was filed. (4.) Because the bill does not show that plaintiffs had any lawful authority to act as commissioners of said *City of Selma.* (5.) Because the bill shows that these defendants are not proper parties defendant thereto. (6.) Because the bill shows no necessity for making these defendants parties defendant thereto. (7.) Because no fact is stated in the bill showing that any of said bonds held by these defendants is or are invalid, either in whole or in part. (8.) Because the purpose of said bill, and of said acts therein referred to and set forth, "is to force these defendants, and other holders of the bonds of said *City of Selma,* to accept less than the amount of the principal and interest of said bonds, without stating any legal or equitable defense to said bonds, or any part or either of them." (9.) Because the bill "does not show that complainants have any right of action, legal or equitable, against these defendants." (10.) Because the bill shows "that said municipal corporation called *Selma.* is the successor of said corporation called the *City of Selma,* and said successor corporation is a necessary party to said amended bill, yet it is not made a party defendant thereto." (11.) Because complainants do not, in their said bill, "aver or state any legal or equitable right in themselves to file said bill against these defendants." (12.) Because the bill shows that these defendants are not proper parties thereto.

The court overruled the demurrer, and its judgment and decree to that effect is now assigned as error.

In the other case (*Amy & Co. v. Selma*), the action was commenced by summons and complaint, sued out on the 27th July, 1883, by said Amy & Co. against said corporation called *Selma ;* and was founded on a judgment for $7,668.12, besides costs, recovered by said plaintiffs, on the 3d December, 1879, in the Circuit Court of the United States at Montgomery, against said former corporation, the *City of Selma.* The original complaint alleged the rendition of the judgment, and the jurisdiction of the court; and after averring the subsequent passage of said two acts approved respectively on the 11th December, 1882, and the 17th February, 1883, further alleged "that the inhabitants and territory formerly embraced within the corporate limits of said *City of Selma* are, by said act last named,

[Amy & Co. v. Selma,]

embraced within the corporate limits and jurisdiction of the municipality of *Selma*, and said municipal corporation in said last named act called *Selma* is the successor to, and liable for the debts of the *City of Selma ;* wherefore plaintiffs claim of said defendant," &c.   An amended count was afterwards filed, by leave of the court, which alleged that, on the 3d December, 1879, "the *City of Selma*, a municipal corporation then existing, was indebted to said plaintiffs in the sum of $7,668.12, the principal and interest then due on certain bonds and coupons, which had theretofore been duly and legally issued by said *City of Selma*, under authority conferred on said City of Selma by the legislature of the State of Alabama;" and then alleged the rendition of the judgment, the jurisdiction of the court, the passage of said two statutes, &c., in the same words as the original complaint.

The defendant demurred to the complaint, original and amended, assigning the following as grounds of demurrer to each count: (1.) Because it shows "that the former corporation therein described, known as the *City of Selma*, and against which said judgment is alleged to have been recovered in the year 1879, afterwards, and heretofore, to-wit, on the 11th day of December, 1882, by virtue of said act of the General Assembly in that behalf, in said complaint referred to, was abolished, dissolved, and abrogated, and thenceforth ceased to exist."   (2.) Because it shows "that said defendant corporation, known and designated as the municipality of *Selma*, by virtue of said act of the General Assembly in that behalf, in said complaint described, was created, incorporated, and brought into existence on the 17th day of February, 1883, long after the recovery of said judgment, and long after the dissolution of said former corporation."   (3.) Because said complaint shows "that said former corporation, called the *City of Selma*, and said defendant corporation, designated as the municipality of *Selma*, are two separate, distinct, independent and noncontemporaneous corporations and bodies public and politic; and it nowhere appears in what way, or by what means, the said latter corporation is liable for the alleged debts of said former corporation, and it appears, on the contrary thereof, that said latter corporation is in no wise liable or answerable, at law, for the alleged debts, or any debts or liabilities of said former corporation."   (4.) Because said complaint "does not show that the alleged coincidence, as to inhabitants and territory, between said former and said latter corporation, constitutes the latter corporation a successor to, or renders the same liable at law, for the debts of said former corporation, but the contrary thereof appears in and by said complaint."   (5.) Because "no cause or ground of action, by or on behalf of plaintiffs,

against the said defendant corporation, is stated, set forth, or in any [manner] disclosed in or by said complaint."

The court sustained the demurrer, and, the plaintiffs declining to amend, rendered judgment for the defendant; and this ruling and judgment are now assigned as error.

PETTUS & DAWSON, for the appellants in each case.—By an act of the General Assembly approved Dec. 17, 1859, the *City of Selma* was authorized to subscribe for stocks in railroads, and to issue its bonds in payment of the stock, and to levy a tax of one per-cent. *per annum* for the payment of such bonds; and the 6th section of the act further declares, "that the faith and credit of said city, and all the property, means and effects of the same, shall be irrevocably pledged for the payment" of such bonds. —Sess. Acts 1859–60, p. 271. By a subsequent act, approved Feb. 8, 1866, said city was authorized to issue bonds to fund the interest on its bonded debt, and to levy a tax of one per-cent. *per annum* to pay the principal and interest of the bonds so issued ; and it was further provided, "that the moneys arising from taxes authorized by this act to be collected shall be set apart for the payment of the interest and principal of the bonds by this act authorized to be issued."—Sess. Acts 1865–6, p. 512. By another act, approved Feb. 23, 1872, said city was authorized to establish a " sinking fund " for the payment of its bonded debt, and to levy a tax of one per-cent. *per annum*, " which shall be in lieu of all taxes now levied for the payment of the bonded debt ;" and it is further declared, that these provisions "are not intended to supersede the power delegated" to said corporation by said act approved Dec. 17, 1859, above cited, " but to be in extension of the same;" and the 6th section calls this tax "a special tax."—Sess. Acts 1871–2, p. 372. In addition to these special legislative provisions relating to the debt of said city, the charter approved Dec. 4, 1868, conferred on it power to levy and collect taxes to pay the expenses of the city, which tax was not to exceed one per-cent. ; but, for the purpose of meeting and adjusting the then " present obligations," power was conferred to " borrow money," and to issue bonds, and for the payment thereof, principal and interest, to "mortgage, or pledge in such other manner as may be deemed best, all the property owned by said city," and to " pledge such amount of the taxes which the corporation may by law levy as may be thought best;" and the tax authorized to be levied " for the payment of debts already contracted " is unlimited.—Sess. Acts 1868, p. 365. The 30th section of the new charter, approved March 8th, 1875, is a copy of the section above quoted from the former, as to levying and pledging taxes; and it further limits the rate of tax on real estate to one

per-cent., "except for the payment of debts already contracted." Sess. Acts 1874-5, p. 356.

These legislative provisions, the validity of which is not questioned, and under which the bonds held by the appellants were issued, were of force when the several acts were passed which are now brought to the consideration of the court, by which the said corporation is dissolved, its property transferred to the State, and another corporation created, embracing the same territorial limits and the same inhabitants, and under a charter substantially the same except as to debts and taxation. These acts, the appellants contend, so far as they impair the value of said bonds, or destroy the means of enforcing them, are violative of the constitutional provision, Federal and State, which inhibits the passage of any law "impairing the obligation of contracts."—*Railroad Co. v. Man. Co.*, 16 Wallace, 318; *Gantly's Lessee v. Ewing*, 3 How. 716; *Bronson v. Kinzie*, 1 How. 316; *Green. v. Biddle*, 8 Wheat. 75; *Von Hoffman v. Quincy*, 4 Wallace, 553. The State constitution contains an additional restriction upon this kind of legislation, by declaring that there can be no law imparing the obligation of contracts, "by destroying or impairing the remedy for their enforcement."—Art. IV, § 56. Some effect must be given to this provision, else its insertion was nugatory; since a former provision inhibited the passage of any law impairing the obligation of contracts.—Art. I, § 23. Another provision, while limiting the general rate of taxation by municipal corporations to one half of one per-cent., confers upon every one then existing and indebted the power to levy an additional tax of one per-cent., "to be applied exclusively to such indebtedness." Art. XI, § 7. This section, the appellants insist, confers upon such corporations a power which cannot be taken away, lessened, or impaired by legislation.

That municipal corporations, so far as they are invested with subordinate legislative powers for local purposes, are mere instrumentalities of the State for the convenient administration of their affairs, and are subject to the legislative will and discretion of the General Assembly—that they may be created, changed, regulated and abolished, at pleasure—is not denied. But this principle is subject to constitutional qualifications, and it can not so oeprate as to allow the General Assembly, under cover of regulating a municipal corporation, or even dissolving it, to destroy the obligation of existing contracts which that corporation had authority to make. To say that the General Assembly can not enact a law impairing the obligation of contracts, but may by law abolish a municipal corporation, and thereby destroy the obligation of the existing contracts that corporation was authorized to make, would be a judicial ab-

[Amy & Co. v. Selma.]

surdity. When a municipal corporation is authorized to take stock in a railroad company, or to engage in any other business or transaction not public in its nature, and to issue its bonds in payment of the obligation thereby incurred, it becomes, to that extent, a private corporation, and its obligations are secured by all the constitutional guaranties which protect the engagements of individuals or private corporations.— *Von Hoffman v. Quincy*, 4 Wallace, 555; *Gantly's Lessee v. Ewing*, 3 How. 716; *Bronson v. Kinzie*, 1 How. 316; *Mount Pleasant v. Beckwith*, 100 U. S. (10 Otto), 514, 529; *Broughton v. Pensacola*, 93 U. S. 269; *O'Connor v. Memphis*, 6 Lea, Tenn. 730.

That the new corporation, called *Selma*, is liable for the debts of the *City of Selma*, is shown by the cases last above cited: 10 Otto, 514; 93 U. S. 269; 6 Lea, 730.

Brooks & Roy, *contra.*—1. Without regard to the constitutional questions involved, the general equity of the bill filed by the commissioners rests on their possession of a trust fund, which they received in good faith, and which enures to the benefit of the defendants and other creditors; and they invoke the jurisdiction and assistance of the court, to secure a proper distribution of that fund.—*Merriwether v. Garrett*, 12 Otto, 530, and authorities there cited; *Railroad Co. v Branch & Co.*, 59 Ala. 139. If the legislation in question effected only the dissolution of the corporation known as the *City of Selma*, and was inoperative for every other purpose; still the special equity remains, that the court will pursue and lay hold of the property and effects of a dissolved or disorganized corporation, and apply them to the payment of its debts.—*Railroad Co. v. Branch & Co.*, 59 Ala. 153; *Curran v. Arkansas*, 15 How. 307; *Dummer v. Wood*, 3 Mason, 308; *Beckwith v. Racine*, 7 Biss. 142; *Maenhaut v. New Orleans*, 2 Woods, C. C. 108; 1 Dillon Mun. Corp. § 37.

2. The two enactments approved respectively on the 11th December, 1882, and the 17th February, 1883, are separate and distinct laws, with intervals of several months in their passage; and the provisions for the application of the assets of the old corporation are separable from those alleged to be obnoxious to constitutional objections. The bill continues equity, without the aid of the provisions assailed as unconstitutional; and the provisions which are unassailed, being separate and distinct from the others, may stand alone.—*Davis v. Minge*, 56 Ala. 121; Cooley's Lim. 177-8, 3d ed.

3. The defendants are proper and necessary parties to the bill, because they are entitled to share in the fund to be distributed. The new corporation is neither a proper, nor a necessary party. It was created after the original bill was filed,

[Amy & Co. v. Selma.]

and it has no interest in the assets to be distributed by the court. Besides, it is a new and distinct corporation, created several months after the dissolution of the former, and under a charter containing different powers.—1 Dill. Mun. Corp. § 52.

4. If the legislation in question is valid and operative, none of the questions raised by the demurrer arise; and the validity of these laws is beyond controversy. The courts are not at liberty, in passing on the validity of legislative acts, to impute improper or unlawful motives or purposes to the General Assembly; nor is there any room for such imputation in this case, since provision is made for the appropriation of the assets of the dissolved corporation to the payment of its debts.—*Merriwether v. Garrett*, 12 Otto, 511.

5. The power of the State to abolish and dissolve a municipal corporation, which is a mere governmental agency, can not be doubted.—*Merriwether v. Garrett*, 12 Otto, 472, 500, 511; *Wolff v. New Orleans*, 13 Otto, 358, 366; *Dartmouth College Case*, 4 Wheaton, 630; *State v. Mayor of Mobile*, 24 Ala. 705; 8 Peters, 281; 1 Dill. Mun. Corp. § 52; Cooley's Const. Lim. 191-3, 276-7. Every person who contracts with such corporation is charged with a knowledge of this principle, and takes his contract with this legal incident annexed, as if it were specially incorporated in the contract.—Cooley's Const. Lim. 193, 276; 4 Wheaton, 630; 12 Otto, 511; 2 Lea, Tenn. 425, 433.

6. The provision in the Federal constitution against laws impairing the obligation of contracts, and the several provisions of the constitution of the State of Alabama on the same subject, mean one and the same thing. The former was judicially construed by the Supreme Court of the United States, which is the final arbiter for the decision of such questions (*Wilson v. Brown*, 58 Ala. 62), as prohibiting laws which substantially destroy or impair the remedy (*Gunn v. Barry*, 15 Wallace, 623); and the provisions of the State constitution were only intended to give effect to this principle.

7. The provision of the State constitution which limits the rate of municipal taxation, with an exception in favor of the existing indebtedness of such corporations, is neither an enabling, nor a self-executing provision, but is a pure limitation and restriction in the strictest sense. It fixes a maximum, but not a measure of municipal taxation; and the measure is in each case, within the maximum, to be found in the charter of the particular municipality.

PER CURIAM.—These causes, involving substantially the same questions, have been considered in connection, and the following conclusions have been reached by the court:

1. The act of the General Assembly, approved December 11, 1882, entitled "An Act to vacate and annul the charter, and dissolve the corporation of the city of Selma, and to provide for the application of the assets thereof to the payment of the debts thereof," operated a dissolution of the corporation known as the "*City of Selma*;" a withdrawal from it of all governmental power which had been confided to it, except so far as the act authorized the continued exercise of such power. But, upon debts and liabilities which had been created or contracted by the corporation, in the exercise of power with which it had been clothed by the General Assembly, the act was without operation. These debts or liabilities were not lessened in obligation, nor extinguished ; nor is it within the competency of legislative power to lessen them in obligation, or to extinguish them.

2. The act is not objectionable, so far as it authorizes the appointment of commissioners, and confers upon them, when appointed, authority to take charge of, collect and control the assets of the former corporation of the "*City of Selma*," making of them the application which is required by law. Nor is it objectionable, so far as it authorizes the commissioners to apply to the "City Court of Selma," on the equity side thereof, for instruction, direction and protection, in the performance and discharge of their duties. Nor is it objectionable, so far as in this respect it may be considered a grant of jurisdiction to said court, nor in the mode of procedure which it prescribes.

3. The act plainly does not contemplate a temporary or permanent deprivation of the people residing within the territorial limits of the "*City of Selma*," of the power of local government, as they had been accustomed to exercise it; nor does it contemplate a suspension or cessation of such government, for any appreciable period of time. On the contrary, the creation of another municipal government, to which substantially the same people and territory would be subject, is plainly contemplated.

4. The subsequent act of the General Assembly, approved February 17, 1883, entitled "An act to incorporate the inhabitants and territory formerly embraced within the corporate limits of the municipal corporation (since dissolved), styled the *City of Selma*, and to establish a local government therefor," is an execution of the intent manifested in the prior act. It is a reorganization, under the corporate name and style of "*Selma*," of the same corporators, and embraces substantially the same territory. The corporation "*Selma*" is the successor of the "*City of Selma*," the preceding corporation, and is bound to the payment of the debts and the satisfaction of the liabilities of its predecessor.

[Rapier v. Gulf City Paper Co.]

5. This obligation resting upon it, when created, it became a necessary party to the bill filed by the commissioners on the equity side of the City Court, under the provisions of the act approved December 11, 1882.

6. The suit at law, founded on the judgment rendered against the " *City of Selma,*" is maintainable against its successor, " *Selma.*"

The decree and judgment of the City Court must each be reversed, and the causes remanded.

NOTE BY REPORTER.—This case was decided on the last day of the last term—July 31st, 1884 ; and it was then announced by C. J. BRICKELL that an opinion would be written out in full. But no other opinion has ever been filed in the case.