# Hare *v.* Kennerly.

*Statutory Detinue against Tax-Collector, for Goods seized for Unpaid Taxes.*

1. *Constitutional provisions relating to taxation.*—The several constitutional provisions relating to the subject of taxation, and regulating the rate of taxation, are not grants of power, but limitations and restrictions upon the inherent power of taxation.

2. *State, county, and municipal taxation; special legislation for Mobile.* Article XI of the constitution provides for the levy of taxes for State, county, and municipal purposes, imposing a particular restriction for each class; and the limitation contained in the 4th section, having reference only to taxes collected for State purposes, does not prohibit the levy by act of the General Assembly of additional taxes for the city or port of Mobile, within the limit prescribed for municipal purposes, since the dissolution of the charter of that city has devolved on the General Assembly the duty of providing for the administration of its affairs and the payment of its debts.

3. *Title and subject-matter of statute, under constitutional provisions.* The act approved December 8th, 1880, adopting and carrying into effect a plan for the adjustment and settlement of the existing indebtedness of the city of Mobile (Sess. Acts 1880–81, pp. 329–60), is not violative of the constitutional provision (Art. IV, § 2) that "each law shall contain but one subject, which shall be clearly expressed in its title."

4. *Recital in title as to report of commissioners.*—As to the report of the "Commissioners of Mobile," referred to in the title of said act of December 8th, 1880, the recital in the title is conclusive on the courts that the report had been laid before the General Assembly as stated, and that said law was enacted on the basis of it, although the fact is not shown by the legislative journals.

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

This action was brought by William Hare, against L. H. Kennerly, to recover certain articles of personal property which the defendant, as tax-collector, had seized for taxes due and unpaid by the plaintiff; and was commenced before a justice of the peace, on the 2d April, 1887. On appeal to the City Court, the defendant pleaded *non detinet*, and a special plea justifying the seizure for taxes levied under the provisions of the act approved December 8th, 1880, "for the adjustment and settlement of the debts of the late city of Mobile," which were due for the year 1886, and which the plaintiff refused to pay on demand. The court overruled a demurrer to this plea, and, on the evidence adduced, instructed the jury to find for the defendant. The plaintiff

VOL. LXXXIII.

[Hare v. Kennerly.]

excepted to these rulings, and he here assigns them as error.
The questions involved relate only to the constitutionality
and validity of the said act approved Dec. 8th, 1880.—Sess.
Acts 1880–81, p. 329.

S. B. BROWNE, JAMES COBBS, and R. INGE SMITH, for the
appellant.

J. LITTLE SMITH, and HANNIS TAYLOR, contra.

SOMERVILLE, J.—The suit is one in detinue for specific
property, brought by the plaintiff against the defendant, as
tax-collector, who justifies the seizure and detention of the
property under a levy made for taxes under the provisions
of the act approved December 8th, 1880, adopting and carry-
ing into effect a plan for the adjustment and settlement of
the then existing indebtedness of the city of Mobile.—Acts
1880-81, pp. 329-360.

The various rulings of the court practically raise but one
controlling question—the constitutionality of this statute,
which was decided by the court below favorably to its
validity, by giving the general affirmative charge requested
by the defendant, and overruling the plaintiff's demurrers
to the special plea setting up the circumstances of the levy
and detention in detail.

The particular clause of the Constitution which is first
supposed to be infringed by this statute is section 4 of Art.
XI, which is in the following language: "The General
Assembly shall not have the power to levy, in any one year,
a greater rate of taxation than three-fourths of one per-
centum on the value of taxable property within this State."
Cons. 1875, Art. XI, § 4.

The objectionable portion of the act of December 8th,
1880, which is insisted to be violative of this constitutional
provision, is the legislative levy of taxes made under section
8, which reads as follows: Sec. 8. "Be it further enacted,
That in execution of the trust assumed by the State in said
act of February 11, 1879, to provide legislation to carry into
effect the adjustment and settlement referred to in the title
of this act, a tax of three-fourths of one per-centum for each
year, until the bonds and coupons under this act are fully
paid, is levied, as authorized by the constitution, and shall
be collected on the value of all the real estate and personal
property within the limits of said city of Mobile, as the same

39

are defined in the charter of said city, which was vacated and annulled by the aforesaid act of February 11, 1879, according to the value of such property as the same may have been assessed for State taxation during the year preceding that for which said tax is levied and is to be collected."

It must be kept in mind that the act of February 11th, 1879, here referred to, expressly vacated the charter of the city of Mobile, dissolved its corporate existence, and provided for the application of the corporate assets in discharge of the debts of the city.—Acts 1878-79, pp. 381-392.  It is admitted that the tax levied by section 8, as above set out, when taken in connection with the taxes levied for State purposes, is in excess of three-fourths of one per-centum, which is the limit of the rate authorized to be levied under said section 4 of Article XI.  Unless, therefore, it can be sustained as a valid exercise of the taxing power, referable to some other authority than this particular clause, it can not be recognized as valid.

This authority is sought for by the appellee in the general discretionary power of the legislature to regulate the subject of taxation, which is unlimited, except so far as that department may be restrained by the State or Federal constitutions. It is argued that the act of December 8th, 1880, can be fully sustained by this settled principle, interpreted by other clauses of the constitution bearing on the taxing power of the State.  Among these clauses is section 7 of Article XI, which, after declaring that "no city, town, or other municipal corporation," shall levy or collect a larger rate of taxation, in any one year, than one half of one per-centum of the value of property authorized to be assessed, besides one per-centum to pay existing indebtedness, makes the following exception in favor of the city of Mobile: "*Provided*, This section shall not apply to the city of Mobile, which city may, until the first day of January, one thousand eight hundred and seventy-nine, levy a tax not to exceed the rate of one per-centum, and from and after that time a tax not to exceed the rate of three-fourths of one per-centum, to pay the expenses of the city government, and *may also*, until the first day of January, one thousand eight hundred and seventy-nine, levy a tax not to exceed the rate of one per-centum, and from and *after that time a tax not to exceed the rate of three-fourths of one per-centum, to pay the existing indebtedness of said city, and the interest thereon.*"

VOL. LXXXIII.

The tax levied under section 8 of the act of December, 1880, is precisely the rate here authorized—three-fourths of one per-centum. And the express purpose for which it was levied, and is to be collected, is "to pay the existing indebtedness" of said city, as compromised under the direct authority of legislative sanction.

The objection made is, that the State levies the tax, and not the city of Mobile, and that, under section 7 above referred to, the city alone was empowered to levy it.

The fallacy of this suggestion consists in the assumption, that these several provisions of the Constitution are *grants* of the power to tax, instead of *limitations* upon the exercise of such power inherent in the legislative branch of the government. Constitutions are to be interpreted in the light of the general principles of our common-law jurisprudence, and of history, as well as by careful comparison of all of their various parts, bearing on subjects of a cognate character. The framers of our constitution are presumed to have known that practically there are no limits to the legislative power over the subject of taxation, except so far as that power may be restrained by the provisions of that fundamental law, and that there was no need of any special grant of power on that subject. Restrictions only were needed, in the light both of history and of law.—*Davis v. State,* 68 Ala. 58; *Mangan v. State,* 76 Ala. 60; *Western Union Tel. Co. v. State Board of Assessment,* 80 Ala. 273; *Ex parte City Council of Montgomery,* 64 Ala. 463. They were equally cognizant of the principle, that municipal corporations are the mere creatures of legislative power, established as political agencies for the more convenient administration of local government, with such powers as to taxation, and other subjects, as the General Assembly may, from time to time, see fit to confer; and that their charters may be repealed, and their corporate existence destroyed, at the pleasure of the sovereignty that brought them into existence.—*Meriwether v. Garrett,* 102 U. S. 472; *Amy v. Selma,* 77 Ala. 103. Municipalities can exercise no right of taxation, except such as may be vested in them by law. The Constitution in no manner infringes upon this principle. It fully recognizes three classes of taxes on property, and three distinct systems of taxation: (1) *State taxes,* levied for State purposes, and commensurate with the entire limits of the State; (2) *county taxes,* levied on property and subjects of taxation in the county, for county purposes; and (3) *muni-*

*cipal taxes* authorized by law to be levied on municipal subjects of taxation, for municipal purposes. Section 4 of Article XI of the Constitution was clearly intended to limit the rate of taxation imposed for the first class; section 5 the rate imposed for the second, and section 7 that imposed for the third. We repeat, that these several clauses are not grants of the power to levy taxes, but limitations upon that taxing power, which has always been inherent in the State, and vested in the legislative branch of the State government, which is the depositary of all authority on the subject. A written State constitution, as has been well said, "is in every instance a limitation upon the powers of government in the hands of agents; for there never was (such) a written republican constitution which delegated to functionaries all the latent powers which lie dormant in the State, and are boundless in extent and incapable of definition."—Cooley's Const. Lim., p. * 37; *Hamilton v. St. Louis County Court*, 15 Mo. 13.

Let us supplement these principles with two others equally well settled, and we can readily see to what conclusion we are necessarily driven.

The Constitution of this State prohibits the enactment by the General Assembly of any law "impairing the obligation of contracts, by destroying or impairing the *remedy* for their enforcement."—Const. 1875, Art. IV, § 56. And a like clause exists in the Federal Constitution, which operates as an iron rule of restriction as well upon the constitutional conventions of States as upon their legislatures.—*Edwards v. Williamson*, 70 Ala. 145. The "Port of Mobile" is the legal corporate successor to the "City of Mobile," and was bound to pay its debts. In *Mobile v. Watson*, 116 U. S. 289, where this proposition was expressly decided by the United States Supreme Court, it was said: "Therefore, the remedies for the enforcement of such obligations assumed by a municipal corporation, which existed when the contract was made, must be left unimpaired by the legislature, or, if they are changed, a substantial equivalent must be provided." See, also, *Amy v. Selma*, 77 Ala. 103; 1 Dillion Mun. Corp. (3d Ed.), §§ 63-66.

For these reasons, when the charter of the city of Mobile was repealed, and all power of taxation delegated to it by law was abrogated, and thereby reverted to the State, it became the constitutional duty of the General Assembly to enact such laws, as to them seemed just, to provide for the

[Hare v. Kennerly.]

settlement of the then existing indebtedness of the city of Mobile, so that the sanctity of these contracts might not be impaired. Having the authority to delegate to that city, as a political and governmental agent, the power to levy for this purpose a tax not exceeding three-fourths of one per-centum, they surely, as sovereign principal, could lawfully exercise the same power in order to fulfill a constitutional duty, when the agent, by legislative *fiat*, had ceased to have any legal existence, and had become incapacitated to exercise any corporate functions whatever. We discover nothing in the Constitution to repel this view, and much to sustain it.

Under these principles, we encounter no difficulty in arriving at the conclusion, that the act of December 8th, 1880, is not unconstitutional on the ground of being violative of section 4 of Article XI of the Constitution of Alabama.

2. We can see no force in the suggestion, that the act under consideration is obnoxious to section 2 of Article IV of the Constitution, which provides, that "each law shall contain but one subject, which shall be clearly expressed in its title." The general subject of this law is the adjustment and settlement of the existing indebtedness of the late corporation known as the "Mayor, Aldermen, and Common Council of the City of Mobile." Everything contained in the act, or expressed in the title, is strictly cognate to this subject—we may say, most unexceptionally so, under the principles announced by all the decisions of this court bearing on this matter.—*Ballentyne v. Wickersham*, 75 Ala. 533. We have often said that this clause of the Constitution "is not violated by any legislative act having various details properly pertinent and germane to one subject."—*Block v. State*, 66 Ala. 493; *Tatum v. State*, 82 Ala. 5.

3. The recital in the title of this act is conclusive on the judiciary department that the report of the "Commissioners of Mobile," as authorized by the act approved February 11th, 1879 (Acts 1878—79, pp. 381-392), had been made and laid before the General Assembly on November 26th, 1880, as therein stated, and that the law here assailed was enacted on the basis of that report. This fact need not be affirmatively shown by the journals of the House or Senate, but its existence will be presumed by the courts.—*Hall v. Steele*, 82 Ala. 562.

The rulings of the City Court are free from error, and its judgment must be affirmed.