(106 So. 231)

### GIBSON v. STATE.    (6 Div. 341.)

(Supreme Court of Alabama.    Oct. 15, 1925. Rehearing Denied Nov. 19, 1925.)

1. **Statutes** ⬥107(1)—Exception in law that bill adopting Code need not contain only one subject is limited to class known as such in legislative history.

In view of cumulative constitutional provisions, Const. 1819, art. 6, § 20, Const. 1868, art. 4, § 27, Const. 1875, art. 4, § 27, Const. 1901, § 85, Const. 1819, art. 3, §§ 1, 23, Const. 1865, art. 4, § 2, and Const. 1868, art. 4, § 2, touching titles of acts, amendments thereto and course of procedure through Legislature, exception in Const. 1901, § 45, that bill adopting a Code need not contain only one subject clearly expressed in its title is limited to class known as such in constitutional and legislative history of state.

2. **Statutes** ⬥144 — "Code" implies compilation of existing laws and revision to harmonize conflicts and generally clarify.

A "Code" implies compilation of existing laws, systematic arrangement into chapters, subheads, table of contents, and index, and revision to harmonize conflicts, supply omissions, and generally clarify and make complete body of laws designed to regulate completely subjects to which they relate.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Code.]

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

3. Statutes ⬗145 — New matter, embodied in Code, is, by act adopting Code, enacted into law.

New matter, embodied in a Code, is, by the act adopting the Code, enacted into law.

4. Statutes ⬗107(1) — Exception of bills adopting Code should not be extended to afford evasion of their salutary provisions.

Const. 1901, § 45, excepting bills adopting Code from requirement of containing single subject, should not be extended so as to afford means of evasion of such salutary provisions.

5. Statutes ⬗107(1)—"Bill adopting a Code" within exception to is constitutional prohibition against bills containing more than one subject.

A "bill adopting a Code" within exception to Const. 1901, § 45, excepting such bill from provisions that each law shall contain but one subject, is one whose title in terms follows language of exception, and which deals with compilation or body of laws theretofore prepared, and not first set out and enacted in bill itself.

6. Statutes ⬗107(1)—Agricultural Code held not within exception in Constitution that bills adopting Code need not contain only one subject.

The Agricultural Code (Acts 1923, pp. 399–550), establishing department of agriculture, and containing new legislation, *held* not within exception of Const. 1901, § 45, that bills adopting a Code need not contain single subject clearly expressed in title.

7. Statutes ⬗107(1)—If title of act contains two subjects, with entire act referable to only one, other will be treated as mere surplusage.

Under Const. 1901, § 45, requiring title of act to contain but one subject, if title contains two subjects, but entire act is referable to one, other will be treated as mere surplusage, and act upheld.

8. Statutes ⬗64(10)—Any added provisions of act not germane to subject will be stricken and act otherwise upheld, if consistent with legislative intent.

Under Const. 1901, § 45, requiring each law to contain but one subject, if title contains but one subject and act deals with that subject, any added provisions not germane to subject, if severable from its valid provisions, will be stricken out and act otherwise upheld, if consistent with apparent legislative intent, and act will not be declared invalid as a whole for want of singleness of subject, unless more than one subject is embraced in both title and body of the act.

9. Statutes ⬗107(1) — Act, creating department of agriculture and industries defining its scope of activities, has a unity of subject.

Since Const. 1901, § 112, creates commissioner of "agriculture and industries" as one of executive officers, legislation relating to agriculture and industries is made one subject, and act creating such department, defining scope of its activities and making regulations as deemed proper, has a unity of subject.

10. Statutes ⬗109—Title of act with clause "and related subjects" should be held to mean such as are related as subordinate and co-ordinate to general subject expressed.

Title of act containing clause "and related subjects" tends to render general title indefinite and uncertain, yet, in view of rule that all intendments should be indulged in favor of constitutionality of act, related subjects should be held to mean only such as are related as subordinate and cognate to general subject expressed unless context forbids such construction.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Related.]

11. Statutes ⬗109 — Title of act containing catalogue of various subheads does not endanger act, if subheads are germane and complementary to general subject.

Title of an act containing catalogue of various subheads does not endanger act, if all subheads are germane and complementary to general subject.

12. Statutes ⬗64(10) — Agricultural Code within rule that provisions pertinent to several subtitles of act are valid.

The Agricultural Code (Acts 1923, pp. 399–550), though not within the exception of Const. 1901, § 45, as to subject, is not invalid as a whole as contravening that provision, but is within the rule that, where several articles within an act are related to general subject, provisions pertinent to such several subtitles are valid enactments.

13. Adulteration ⬗2—Legislature has power to define what grain is excepted from commercial feeds.

Legislature has power to define what grain is excepted from commercial feeds and prohibit sale of any grain which, for good cause, should be barred from market as feedstuff, notwithstanding, under Agricultural Code, art. 15, § 1, whole seeds or grains are excepted from commercial feeds as therein defined.

14. Statutes ⬗114(1)—An act whose title declares purpose to regulate business cannot prohibit business it purports to regulate.

An act whose title declares purpose to regulate business cannot prohibit business it purports to regulate.

15. Statutes ⬗119(1) — "Govern and regulate," as employed in title of act creating department of agriculture and industries, held broader than merely to "regulate."

"Govern and regulate," as employed in title to Acts 1923, pp. 399–550, creating department of agriculture and industries, *held* broader than merely to "regulate."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Govern; Regulate.]

16. Statutes ⬗114(1) — Statute prohibiting sale of mill oats held constitutional.

Acts 1923, p. 451, art. 20, § 4, prohibiting sale of mill oats, *held* not violative of Const. 1901, § 45, providing that laws shall contain but one subject clearly expressed in title with certain exceptions.

⬗For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**17. Adulteration ⬳7—"Mill oats" defined.**

"Mill oats," known to trade at time Agricultural Code (Acts 1923, pp. 399–550) was enacted, and referred to therein, is species of wild oats of volunteer growth with a dark brown or almost black kernel incased in hard cover with stiff beard, having low food value.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Oats.]

**18. Commerce ⬳13—State has power to regulate internal commerce.**

Power of state to regulate internal commerce is as plenary as that of Congress to regulate interstate commerce.

**19. Adulteration ⬳2—Inhibition of sale or offering for sale of mill oats within state held within police power of state.**

Inhibition of sale or offering for sale of mill oats within state, as provided in Acts 1923, p. 451, art. 20, § 4, *held* within police power of state.

**20. Commerce ⬳55—State has power to forbid entry of article into internal commerce of state, notwithstanding that such is indirect restriction on interstate commerce.**

Fact that act of Legislature forbidding entry of article into internal commerce of state tends to reduce movement of article into state through channels of interstate commerce, thus indirectly restricting such commerce, does not deprive state of police power to protect its inhabitants by legislation of such character.

**21. Adulteration ⬳7—Feeding mill oats for hire held sale thereof, within act prohibiting sale of mill oats.**

In proceedings to condemn grain offered for sale in violation of law, *held*, that feeding of mill oats for hire by veterinary to horses and mules belonging to public was a sale of mill oats, within meaning of Acts 1923, p. 451, art. 20, § 4.

Appeal from Circuit Court, Jefferson County; William M. Walker, Judge.

Proceeding by the State of Alabama to condemn grain, etc., offered for sale in violation of law, claimed by Alexander Gibson. From a decree of condemnation, claimant appeals. Affirmed.

The title of the act of 1923 (Acts, p. 399) is as follows:

"An act to provide a general system of legislation pertaining to agriculture and industries, and related subjects, including therein the establishment of a department of agriculture and industries; a state board of agriculture; the abolishment of the board of agriculture as provided by an act approved February 11, 1911, and known as the board of agriculture; the abolishment of the board provided for by chapter 24 of the Code of 1907, as subsequently amended and known as the state board of horticulture; and the abolishment of a board provided for by article 4 of chapter 22 of the Code of 1907, as subsequently amended and known as the state live stock sanitary board; the transfer of all the powers and duties vested in and required to be performed by the said boards abolished, and of any unexpended balances of fees or appropriations to the said board created in this act; the prescribing of the powers and duties of the commissioner of agriculture and industries, and of the state board of agriculture; and including ample provisions governing and regulating the subjects of fertilizers and fertilizer materials; limestone; white lead or paints, linseed oil, and turpentine, kerosene and other illuminating oils; insecticides and fungicides; commercial feeds; agricultural seeds; eggs, vinegar; sausage, imitation butter and cheese; milk, cream, ice cream and other dairy products, and the premises thereof; foods and drugs; corn meal; mills and millers; bees and honey; weights and measures, and the legal weights and measures of certain commodities; public gins; cotton; cotton standards and public cotton classers; public warehouses; uniform law of warehouse receipts; horticultural and floracultural products; trees, fruit trees, seeds, plants and vines as to name, variety and kind; citrus fruits; sale of farm produce by the producer; standards for agricultural products and their containers; standards for grain; live stock; live stock pedigrees, estrays; the sale of farm produce on commission; the leveeing, ditching and draining of wet, swamp and overflowed lands; the purchase and support of experimental farms by counties; the approval and support of county agents; the establishment of an agricultural fund in the state treasury out of the sums accruing from the operation of the provisions of this act, and the appropriations from said fund, for the support of these provisions; and the repeal of all laws and parts of laws in conflict with the provisions of this act."

Stokely, Scrivner, Dominick & Smith, and Frank Bainbridge, all of Birmingham, for appellant.

A provision in the body of an act prohibiting the sale of a given subject is not clearly expressed in the title, which merely expresses a purpose to govern and regulate that subject. Such prohibition is unconstitutional and void. Const. 1901, § 45; Ballentyne v. Wickersham, 75 Ala. 533; Lindsay v. U. S. Sav. & L. Co., 120 Ala. 156, 24 So. 171, 42 L. R. A. 783; Miller v. Jones, 80 Ala. 89; Watson v. State, 140 Ala. 134, 37 So. 225; Benton v. State, 168 Ala. 175, 52 So. 842; Sheffield Oil Mill v. Pool, 169 Ala. 420, 53 So. 1027; Yahn v. Merritt, 117 Ala. 485, 23 So. 71; State v. Davis, 130 Ala. 148, 30 So. 344, 89 Am. St. Rep. 23; Board of Rev. v. Roberts, 200 Ala. 456, 76 So. 388; Builders' & Painters' Sup. Co. v. Lucas, 119 Ala. 202, 24 So. 416; Wallace v. Ball, 205 Ala. 623, 88 So. 442; State v. Nelson, 210 Ala. 663, 98 So. 715. When the title and body of an act contain more than one subject, the entire act is void. Const. 1901, § 45; Pillans v. Hancock, 203 Ala. 570, 84 So. 757; Allman v. Mobile, 162 Ala. 226, 50 So. 238; Lovejoy v. Montgomery, 180 Ala. 473, 61 So. 597; Thomas v. State, 16 Ala. App. 145, 75 So. 821; Rice v. Westcott, 108 Ala. 353, 18 So. 844. A penal statute can have no extraterritorial effect and must be strictly construed. Dumas v. State, 17 Ala. App. 492, 86 So. 162; 16 C. J. 149. A

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

statute under the police power cannot prohibit the sale of a legitimate article of interstate commerce in an original package. Citizens' Bank v. Buckheit, 14 Ala. App. 511, 71 So. 82; Tyson v. Jennings Prod. Co., 16 Ala. App. 374, 77 So. 986; Smith v. Montgomery Ward & Co., 209 Ala. 317, 96 So. 231; Lee v. Intendant, etc., 153 Ala. 675; 45 So. 294; W. T. Rawleigh Co. v. Walker, 16 Ala. App. 232, 77 So. 70; Austin v. Tennessee, 179 U. S. 343, 21 S. Ct. 132, 45 L. Ed. 224; Dahnke-Walker Mill. Co. v. Bondurant, 257 U. S. 282, 42 S. Ct. 106, 66 L. Ed. 239; Leisy v. Harden, 135 U. S. 100, 10 S. Ct. 681, 34 L. Ed. 128; Bowman v. C. & N. W., 125 U. S. 465, 8 S. Ct. 689, 1062, 31 L. Ed. 700; Farmers' Grain Co. v. Langer (C. C. A.) 273 F. 635, 19 A. L. R. 148; Lemke v. Farmers' Grain Co., 258 U. S. 50, 42 S. Ct. 244, 66 L. Ed. 458. The enactment of the bill here in question was not the adoption of a code, digest, or revision of statutes, within the exception to section 45 of the Constitution. There is a distinction between the enactment of original legislation and the adoption of a code. Const. 1865, § 2, art. 4.; Const. 1875, § 2, art. 4; Webster's New Int. Dict., "Enact;" "Adopt." The authorities cited by appellee have reference to the adoption in the form of a code of previous acts of the Legislature or previously existing law.

Harwell G. Davis, Atty. Gen., Jim Davis, Sol., L. Herbert Etheridge, Asst. Sol., and Thos. C. McClellan, all of Birmingham, and James J. Mayfield, of Montgomery, for the State.

The provisions of section 4, article 20, of the act, are germane to the subject expressed in the title and necessary to the effectuation of the subject expressed. Ex parte Mayor, etc., of City of Birmingham, 116 Ala. 186, 22 So. 454; Cooley, Const. Lim. (6th Ed.) 1723; Lovejoy v. Montgomery, 180 Ala. 476, 61 So. 597; State v. Gullatt, 210 Ala. 452, 98 So. 373; Lindsay v. U. S. S. & L. Ass'n, 120 Ala. 156, 24 So. 171, 42 L. R. A. 783; Dickinson v. Cunningham, 140 Ala. 527, 37 So. 345; 28 C. J. 749; Richmond F. & P. R. Co. v. Richmond, 96 U. S. 521, 24 L. Ed. 734. There is no constitutional restriction on the comprehensiveness, the scope, or the magnitude of the single subject of a legislative act. Ex parte Thomas, 113 Ala. 1, 21 So. 369; 55 L. R. A. 836, note; 25 R. C. L. 842–845; 1 Lewis' Sutherland, Stat. Const. 194. The act in question is a revision of the laws relating to the department of agriculture and industries, and is excepted from the general provison that an act must contain but one subject. 1 Lewis' Sutherland, Stat. Const. 515; Dew v. Cunningham, 28 Ala. 466, 65 Am. Dec. 362; Hoover v. State, 59 Ala. 57; C. of G. v. State, 104 Ga. 831, 31 S. E. 531, 42 L. R. A. 518; Ex parte Thomas, 113 Ala. 4, 21 So. 369; Ex parte Pollard, 40 Ala. 98; Marston v. Humes, 3 Wash. 267, 28 P. 520; McLane v. Paschal, 8 Tex. Civ.

App. 398, 28 S. W. 711. The state, in the exercise of its police power, has the right to make regulations or to pass laws which indirectly affect interstate commerce. Smith v. State, 124 U. S. 465, 8 S. Ct. 564, 31 L. Ed. 508; Mayor, etc., v. Miln, 11 Pet. 102, 9 L. Ed. 648; Brown & Co. v. Adair, 104 Ala. 652, 16 So. 439; Plumley v. Mass., 155 U. S. 461, 15 S. Ct. 154, 39 L. Ed. 223; 12 C. J. 82; Schollenberger v. Pennsylvania, 171 U. S. 1, 18 S. Ct. 757, 43 L Ed. 49; People v. Arensberg, 105 N. Y. 123, 11 N. E. 277, 59 Am. Rep. 483; 2 C. J. 85.

BOULDIN, J. This is a proceeding in the name of the state, instituted by agents of the department of agriculture and industries, for the condemnation and confiscation of "100 sacks, 160 pounds per sack, mill oats and screenings," under section 2, article 21, of the Agricultural Code of Alabama. Acts 1923, p. 452. The complaint charged that the product described, located on premises of defendant in Birmingham, was being sold, offered, or exposed for sale in this state in violation of section 4, article 20, of the Agricultural Code. This section (Acts 1923, p. 451) reads:

"Any person who shall sell what is known to the trade as 'mill oats' or like product either by itself or in combination with a commercial feed (as defined in article 15 of this act) or who shall sell corn, oats, rye, wheat or barley which has been adulterated, by means of the addition thereto of screenings, chaff, weed seed, wild oats, 'mill oats,' or water, shall be guilty of a misdemeanor, and the corn, oats, rye, wheat or barley so adulterated, shall be subject to seizure from confiscation by writ of attachment for condemnation, as provided for in article 21 of this act."

The matters of defense set up, and here presented by assignments of error, are, in substance, as follows:

First. The entire act known as the Agricultural Code of Alabama (Acts 1923, pp. 399 to 550) is void, because in violation of section 45, Constitution of 1901, saying:

"Each law shall contain but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a Code, digest, or revision of statutes."

Second. Section 4, article 20, above quoted, is void because not germane to the subject expressed in the title to the act.

Third. Said section is void because in violation of the interstate commerce clause of the federal Constitution.

Fourth. The "mill oats" seized were not held for sale, offered for sale, nor being otherwise held or used in violation of law, or subject to the condemnation provisions of the statute.

The pertinent evidence upon the issues will be discussed as they are taken up in course

of this opinion. The major question stressed in argument on both sides is the constitutionality of the act first above mentioned. The title of the act appears in full in the report of the case.

The state insists in argument that the act in question is a "bill adopting a Code, digest, or revision of statutes," excepted by section 45 of the Constitution from the general rule therein declared. Because of the novelty of this question, and its importance in future legislation, we deal with it first.

Section 1 of the act declares it shall be known and cited as the "Agricultural Code of Alabama." The first clause of the title is:

"To provide a general system· of legislation pertaining to agriculture and industries, and related subjects."

A Code has been defined as "a system of law; a systematic and complete body of law." Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923, 28 Am. St. Rep. 382, 2 Words and Phrases, First Series, page 1239.

The act is arranged in a series of articles, with subheadings, dealing with the several matters of legislation. In subject-matter the act is in the main a compilation and revision of a long series of legislative enactments, beginning with the creation of a department of agriculture in 1885 (Code 1886, § 129 et seq.), headed by a commissioner of agriculture, at the time a statutory officer, and extending through the several Codes and session acts thereafter. It represents the growth or enlargement of the activities of the department of agriculture and industries, and the laws relating thereto for 40 years. This act of 1923 also contains new legislation, extending into new fields, notably in correlating and extending the sphere of regulation and activity in keeping with the lead of the federal Department of Agriculture.

The bill was the result of the labors of a joint legislative committee directed to "fully consider and carefully. prepare a constructive and practical system of agricultural legislation for the state of Alabama." House Journal 1923, p. 228.

At the legislative session of' 1919 (Laws 1919, p. 1066) was passed the act "for the revision, codification, digesting, and promulgation of the public statutes of this state, both civil and criminal," looking to the Code of 1923. This act directed the Code commissioner to omit "the laws relating to the department of education, the laws relating to the department of agriculture, the laws relating to the game and fish department, these to be published in pamphlet form." Accordingly these laws were omitted, and the act before us to be known as the "Agricultural Code of Alabama" was enacted. It seems clear enough the legislative purpose was to enact a system of laws pertaining to agriculture and industries to be published for distribution separate from the general Code, and to have the effect and name of a special Code. The power of the Legislature to make such provisions for the publication and distribution of the laws pertaining to a department of government as may appear to best acquaint interested persons with the provisions of the law is unquestioned; nor do we see any constitutional hindrance to placing in Code. form all the laws pertaining to a department of government. But do these considerations bring the act in question within the exception named in section 45 of the Constitution?

The Constitution of 1819, art. 6, § 20, required that' at stated periods "the body of our laws, civil and criminal, shall be revised, digested, and arranged, under proper heads, and promulgated in such manner as the General Assembly may direct."

· In the Constitution of 1868, art. 4, § 27, the wording was changed so as to provide for the "revision, digesting and promulgation of all the public statutes of this state, both civil and criminal." This provision was carried without change into the Constitution of 1875, art. 4, § 46, and the Constitution of 1901, § 85.

In the Introduction to 2 Brickell's Digest, p. viii, will be found the history of the several Digests and Codes of Alabama down to and including the Revised Code of 1867, omitting the Penal Code of 1866.

It will be noted that all these Codes and Digests were prepared by a commissioner or commissioners, elected or appointed for the purpose, their work reported to and adopted by the Legislature. The later Codes of 1876, 1886, 1896, 1907, and 1923 were prepared in the same way.

The act "adopting" the Code in each case was in the form of a brief bill, identifying the work prepared by the commissioner, usually examined and revised by the Legislature through a joint recess committee, and declaring its adoption as the law of the state.

Section 45 of the present Constitution did not appear in the Constitution of 1819, but it did prescribe the style of laws, (article 3, § 1), and provided:

"No bill shall have the force of a law, until on three several days it be read in each house, and free discussion be allowed thereon." Article 3, § 23.

The Code of 1852 provoked criticism and attack because of new matter inserted therein, not considered in the nature of codification and revision of existing statutes. See criticism in Introduction to 2 Brickell's Digest, above cited.

In Dew v. Cunningham, 28 Ala. 466, 65 Am. Dec. 349, decided in 1856, the Code of 1852 was attacked because, at the time of its adoption, it was not read upon three several days in each house. The provision of the Constitution invoked was held not to mean that

everything which is to become a law by the adoption of the Code bill must be read on three several days; that the construction contended for would exclude the power of making comprehensive legislative enactments.

In the Constitution of 1865 appeared article 4, § 2, as follows:

"All laws shall be passed by original bill; and their style shall be, 'Be it enacted by the senate and house of representatives of the state of Alabama in General Assembly convened.' Each law shall embrace but one subject, which shall be described in the title; and no law, or any section of any law, shall be revised or amended by reference only to its title and number, but the law or section revised or amended shall itself be set forth at full length."

This section was considered in Ex parte Pollard, 40 Ala. 77, 98–99, at June term, 1866, wherein Walker, C. J., wrote as follows:

"The Constitution requires that only one *subject* shall be embraced, and that it should be described in the title. '*Subject*' is a very indefinite word. A phrase may state the *subject* in a very general or indefinite manner, or with minute particularity. The *subject* of laws with such titles as the following, 'to adopt a penal Code,' 'To adopt the common law of England in part,' 'To adopt a Code of laws,' 'To ratify the by-laws of a corporation,' would be expressed in a very general way, and very little knowledge of the specific provisions of the laws could be gleaned from the title, yet it would nevertheless be true that the subject was described in the title. * * * It is impossible to prescribe any standard of particularity for the Legislature. The Constitution has not attempted to do so. It exacts from the Legislature an announcement in the title of the subject, but does not dictate any degree of particularity. This is a matter left to legislative discretion. Brewster v. City of Syracuse, 19 N. Y. 116; Mutual Insurance Co. v. New York, 8 N. Y. 241; Bibb Co. Loan Ass'n v. Richards, 21 Ga. 592. The object of the constitutional provision was to prevent deception by the inclusion in a bill of matter incongruous with the title. The evil contemplated was not the generality and comprehensiveness of titles. Those faults do not tend to mislead or deceive."

In the Constitution of 1868, art. 4, § 2, the clause "All laws shall be passed by original bill," appearing in the Constitution of 1865, was stricken, and the clause "Each law shall embrace but one subject, which shall be *described* in the title," was made to read:

"Each law shall contain but one subject which shall be *clearly expressed* in its title." (Italics supplied.)

The exception of an act adopting a Code was first introduced in the Constitution of 1875. This Constitution introduced other safeguards to legislation, such as requiring bills to be referred to committees, to be read at length on final passage, and entering the yea and nay vote upon the journals. The purpose of these provisions was considered in State v. Buckley, 54 Ala. 599, 612.

[1] In view of the cumulative constitutional provisions touching the titles of acts, amendments thereto, and the course of procedure through the Legislature, all intended to acquaint the members with the substance and effect of pending legislation and impose a responsibility upon each member in casting his vote thereon, we are impressed the exception of a bill "adopting" a Code was and is limited to the class known as such in the constitutional and legislative history of the state.

[2] A Code implies, first, a compilation of existing laws, their systematic arrangement into chapters or articles and sections, with subheads, table of contents, and index for ready reference; second, a revision such as to harmonize conflicts, supply omissions, and generally clarify and make complete the body of laws "designed to regulate completely, so far as a statute may, the subjects to which they may relate." Ex parte Thomas, 113 Ala. 1, 4, 21 So. 369; Hendon v. White, 52 Ala. 597; Central Georgia Ry. Co. v. State, 104 Ga. 831, 31 S. E. 531, 42 L. R. A. 518.

[3, 4] The subject-matter constituting the basis of a Code as defined in our Constitution is the existing statutory law. In keeping with this intent, our acts for the preparation of a Code usually direct the commissioner to make report of all changes made in course of revision, and to prepare separate bills for any distinctly new legislation which he may recommend. For obvious reasons, this is the proper course. Any new matter, however, embodied in the Code, is, by the act adopting the Code, enacted into law. Bluthenthal v. Trager, 131 Ala. 639, 31 So. 622; Bales v. State, 63 Ala. 30; Hoover v. State, 59 Ala. 57. All these considerations strongly argue that the exception of "bills adopting a Code" from the safeguards so carefully framed for the passage of laws should not be extended so as to afford a ready means of evasion of their salutary provisions.

[5] Our conclusion is that a bill adopting a Code, within the exception to section 45, is one whose title in terms follows the language of the exception, at least in substance, and which deals with a compilation or body of laws theretofore prepared, and not first set out and enacted in the bill itself.

A bill to "adopt" a Code directs the attention of the legislator elsewhere for the contents of the Code. A bill to enact into law the matter set forth therein must, by its title, direct the legislator's attention to the subject of legislation in the manner declared by section 45. Any other rule would invite evasion of the Constitution by the expedient of naming the act a Code, or, if not so entitled, make its validity to depend upon whether it is such a compilation and revision of laws as to come within the legal definition of a Code. This would lead to still greater uncertainty in framing valid enactments, and greater dif-

ficulties in passing upon their validity. One important end to be aimed at in construing constitutional provisions is certainty.

We are not holding the Legislature is without power to provide and enact a special Code embodied in the bill and so to style the act, but we are holding that in so doing the act must conform to the requirement of "one subject" "clearly expressed" in the title. To illustrate, if the Legislature should pass a bill entitled an "Act to provide a Code relating to game and fish," and incorporate therein provisions relating to fertilizers or standards of grain, no one could well contend such provisions would be valid.

[6] The title to the act before us does not in terms purport to be one adopting a Code, but, on the contrary, one whose framers considered subject to the general rule, as evidenced by the title defining the subject in general terms, followed by a catalogue or synopsis of its several subdivisions. It is not within the exception, and must stand or fall under the general rule declared in section 45. Does this act conform to that rule?

The purpose and effect of the provision under consideration has been so often considered and carefully stated by this court that no elaborate discussion need be here indulged. For present purposes we merely note there are two requirements, viz.: First. "Each law shall contain but one subject." Second. That subject "shall be clearly expressed in the title."

The purpose of the requirement of a single subject is primarily to prevent "log-rolling" legislation, the support of doubtful measures induced by adding others upon unrelated subjects. Incidentally, it is also to avoid ill-considered provisions passing into law while the thought of the legislator is directed to another subject.

[7] We note the language is "Each law" shall contain but one subject, not that the title shall contain but one. Accordingly, it is the settled construction that if the title contains two subjects, but the entire act is referable to one of those subjects, the other will be treated as mere surplusage, and the act upheld. Hawkins v. Roberts, 122 Ala. 130, 27 So. 327; Robinson v. Moseley, 93 Ala. 70, 9 So. 372.

[8] Again, if the title contains but one subject, and the act deals with that subject, any added provisions not germane to the subject, if severable from its valid provisions, will be stricken out, and the act otherwise upheld if consistent with apparent legislative intent. This intent is often expressed in the act itself. Such is the act before us. Acts 1923, art. 44, § 2, p. 550.

From these rules, it results that an act will not be declared invalid as a whole for want of singleness of subject, unless more than one subject is embraced in both the title and body of the act.

The requirement that the subject shall be "clearly expressed in the title" is to direct the attention of the legislator and the interested public to the theme of pending legislation; to avoid laws passed under deceptive or misleading titles. An act is subject to this vice when the title expresses one subject, and the bill deals with another, or when the subject expressed is so narrow and restrictive as to give no notice of the real subject, or of the particular provisions brought under review, or when the subject expressed is so vague or meaningless as to give no clear idea of any theme of legislation.

For the effect and practicable application of this section, we quote from the opinion of this court per Stone, J., in the leading case of Ballentyne v. Wickersham, 75 Ala. 533, the following:

"* * * This court has committed itself in favor of the following propositions, which are in harmony with the rulings elsewhere in the best considered cases: That the clause is mandatory; that its requirements are not to be exactingly enforced, or in such manner as to cripple legislation; that the title of a bill may be very general, and need not specify every clause in the statute. Sufficient if they are all referable, and cognate, to the subject expressed. And when the subject is expressed in general terms, every thing which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is included in, and authorized by it [citing cases]. * * *

"In division of Howard Co., 15 Kan. 194, it was said: 'The "subject" to be contained in a bill under section 16, article 2, of the Constitution, which provides that "no bill shall contain more than one subject, which shall be clearly expressed in its title," may be as broad and comprehensive as the Legislature may choose to make it. It may include innumerable minor subjects, provided all these minor subjects are capable of being so combined as to form only one grand and comprehensive subject; and, if the title of the bill containing this grand and comprehensive subject is also comprehensive enough to include all these minor subjects as one subject, the bill and all parts thereof will be valid.' This language, it seems to us, is eminently just and proper. * * *

"We approve, and adopt as our own, the following language of the Supreme Court of Minnesota, in State ex rel. v. Kinsella, 14 Minn. 524 (Gil. 395): 'The exigencies of legislation require that this provision should not be so strictly [literally?] construed as to cripple the Legislature, by prohibiting the insertion into laws of those matters which, though they may not be specifically expressed in the title, are proper to the full accomplishment of the object so expressed; such is presumed to have been the intention of its authors. Courts, therefore, give it a liberal construction. The insertion in a law of matters which may not be verbally indicated by the title, if suggested by it, or connected with, or proper to the more full accomplishment of the object so indicated, is held to be in accordance with its spirit; but a more liberal construction cannot be given, without letting in the evils which the provision was in-

tended to exclude.' We may add, that if the questioned clause, or clauses, be not so correlated to the subject expressed in the title, as to appear to follow as a natural and legitimate complement, then they cannot stand under the clause of the Constitution under discussion."

This case has been so often approved and followed that a full list of citations would serve no good purpose. See Sheppard's Citations.

Other announcements of like effect in varied language may be readily found by reference to annotations to section 45 of the Constitution in the Political Code of 1923.

The Constitution of Georgia contains a provision of like import with ours, without excepting a Code from its operations. We quote with approval the following from the well-considered case of Central of Georgia Railway Co. v. State, 104 Ga. 831, 846, 31 S. E. 531, 536 (42 L. R. A. 518):

"No one need be misled by a title to an act which declares that its purpose is to adopt a certain Code, or system of laws; nor is there anything in such an act to occasion any alarm that it would pass contrary to the wishes of the people by virtue of improper combinations among members of the Legislature. What the Constitution looks to is unity of purpose. It does not mean by one subject-matter only such subjects as are so simple that they cannot be subdivided into topics; but it matters not how many subdivisions there may thus exist in a statute or how many different topics it may embrace, yet, if they all can be included under one general comprehensive subject which can be clearly indicated by a comprehensive title, such matter can be constitutionally embodied in a single act of the Legislature."

In the study of the title and body of the act before us in the light of the principles stated, we note: The title first states the subject in general terms, viz.:

"To provide a general system of legislation pertaining to agriculture and industries, and related subjects."

Without question this title is broad and comprehensive. Faircloth-Segrest Merc. Co. v. Roach, 211 Ala. 498, 100 So. 908. Standing alone, and without the aid of other constitutional provisions, it would seem that "agriculture" and "industries" are two distinct subjects of legislation.

[9] By section 112 of the Constitution of 1901 a "commissioner of agriculture and industries" is made one of the executive officers of the state. This constitutional office looks to the perpetuation of a department of the state government under the appropriate name of the "department of agriculture and industries," headed by such commissioner. It follows that an act creating such department, defining the scope of its activities, and making such regulations as are deemed proper to make it an effectual and useful agency, has a unity of subject. Legislation relating to agriculture and industries is thus made one subject by the Constitution itself.

[10] The general title, however, has the further clause: "And related subjects." This addition is subject to criticism. It tends to render the general title indefinite and uncertain, as well as duplex. "Other subjects" can give no intimation of the scope the act may cover. The saving word "related" leaves open the inquiry whether they are "related" as co-ordinate subjects with the one expressed. If so, in dealing with such title it may become necessary to inquire whether some still more comprehensive subject clearly appears from the title broad enough to cover the subject expressed and related subjects. In view of the rule that all intendments should be indulged in favor of the constitutionality of the act, perhaps "related subjects" should be held to mean only such as are related as subordinate and cognate to the general subject expressed, unless the context forbids such construction. Here the words "and related subjects" are followed by "including therein." Then follows a catalogue of the headings of the several articles found in the body of the act. The title to an act, like every instrument known to the law, should be construed as a whole.

[11] While the title is not intended to contain the substance of the statute, but is intended to be a concise statement giving the subject or theme of legislation, a catalogue of the various subheads may serve as an aid in defining the scope of the general subject, and to more "clearly express" the subject-matter to be embodied in the act. This form of title has been often approved, and does not endanger the act if all the subheads are germane and complementary to the general subject. Hubbard v. State, 172 Ala. 374, 55 So. 614; Alford v. State, 170 Ala. 178, 54 So. 213, Ann. Cas. 1912C, 1093.

[12] On a full study of the table of contents or list of subheads in the title, we are convinced that in the light of present day legislation they are each and all included within "a general system of legislation pertaining to agriculture and industries." The several articles are thus related to this general subject as the branches are related to a tree. Such being the case, provisions pertinent to these several subtitles are valid enactments.

If the inclusion of "related subjects" in the general clause is construed as rendering the title double, this, as above shown, does not render the entire act void, unless the act contains provisions not referable to the one subject which is expressed in the title. The only provision pointed out, and claimed to be unrelated to any of these subtitles, is section 4, article 20, involved in the present cause. Among the subtitles we find:

"Including ample provisions governing and regulating the subjects of * * * commercial

feeds; agricultural seeds; * * * standards for grain."

[13] It is suggested under article 15, section 1, "whole seeds or grains" are excepted from "commercial feeds" as therein defined, and hence provisions barring "mill oats" from the market cannot be referred to the article on commercial feeds. It is not questioned in the record that "mill oats" were being sold on the market as feed for live stock. In excepting whole seeds or grains, we see no reason why the Legislature may not define what grain is so excepted, and prohibit the sale of any grain which, for good cause, should be barred from the market as feedstuff. Again, in fixing the market "standards of grain" provisions protecting and making these standards practically effective may well include the prohibition of the sale of grains not coming within these standards, but declared, for good cause, unfit to go upon the market. Again, the act undertakes to fix the standard and regulate the sale of "agricultural seeds," with a view, among other things, of preventing the spread of "noxious weeds." The protection of the soils from such infection may warrant the express prohibition of the sale of wild oats as germane to the subject of "agricultural seeds."

[14, 15] It is suggested that a title purporting to "regulate" a business cannot include provisions "prohibiting" that business. It is the law that an act whose title declares the purpose to "regulate" a business, such as the sale of liquors, cannot "prohibit" the business it purports to regulate. Miller v. Jones, 80 Ala. 89; State v. Davis, 130 Ala. 148, 30 So. 344, 89 Am. St. Rep. 23. We think to "govern and regulate," as employed in the title to this act, is broader than merely to "regulate." But many regulatory statutes properly include prohibitions under penalty when deemed necessary to make effective the regulations. This court has sustained numerous statutes prohibiting under penalty the doing of things in violation of regulations adopted by governmental agencies.

[16] We conclude section 4, article 20, is not violative of section 45 of the Constitution. Appellant further insists that section 4, article 20, of the Agricultural Code is void because a restriction upon interstate commerce and violative of the federal Constitution conferring upon Congress the exclusive power to regulate commerce between the states.

The complaint charges the mill oats in controversy were "being sold, offered, or exposed for sale in this state." The federal Constitution does not deal with commerce within the state. The argument of appellant seems to be based on the view that the facts of the case bring the transaction within the sphere of interstate commerce, and that the prohibition of sale, as well as provisions for confiscation, as applied to the case in hand, are not within the police power of the state.

It appears appellant ordered through a broker at Birmingham a carload of mill oats and screenings. This order was placed with and accepted by Nashville Grain Company, at Nashville, Tenn. The shipment was delivered in Birmingham, for use of appellant in feeding horses and mules belonging to the public, kept and fed for hire in appellant's stables in connection with his business as a veterinarian.

It further appears from the record that prior to the World War "mill oats" as known to the trade consisted of the lighter, smaller grains of oats, the residue or screenings after selecting the larger, fuller grains for the manufacture of oatmeal and other cereals.

[17] A species of wild oats, a natural volunteer growth, is found in the northwestern states, notably in Minnesota and the Dakotas. This wild oat appears in grain fields, and becomes mixed at harvest time especially with spring wheat and oats. It appears at times this wild oat, when screened out, was mixed in small percentages with mill oats and other screenings sold on the market. During and since the World War this wild oat has come to be harvested, threshed, and placed on the market as the sole or chief content of feedstuff sold under the name of "mill oats." This is the "mill oats" known to the trade when our Agricultural Code was enacted, and is the grain seized in this suit.

Wild oats proper are described as resembling common black oat, with dark brown or almost black kernel, incased in a hard cover, with long stiff awn or beard and densely hairy base. By chemical analysis, this wild oat shows a substantial food value, but of less protein and greater fibre content than No. 2 oats. Under the name of mill oats it sells at a lower price than oats.

The state's evidence tends to show this wild oat in its natural state is not a desirable feed, in that the long thorny beard makes sore the mouths of live stock, prevents proper chewing, may injure the stomach, and has low available food value. On this issue there is sharp conflict. The defendant's evidence controverts any injurious effects to the mouth; asserts that by actual test stock thrive well on this feed, etc.

It further appears this wild oat tends to spread in the grain fields where found, reducing the quantity as well as grade of the cultivated grain crop; that the seed persists and under favorable conditions will remain in the soil and germinate after several years; that in the states where found it is considered a weed pest; that the Department of Agriculture of the United States has so classed it, and issues bulletins in aid of its eradication. Other evidence, and probably common knowledge, goes to the effect that seeds are scattered and soils may become infected

with noxious weeds and grasses through the manures from live stock.

The argument of appellant seems to be that "mill oats" is a known and established subject of interstate commerce; that our statute prohibiting a sale thereof is such a restriction upon the movement of this product in interstate commerce as to be violative of the federal Constitution.

If we were dealing with a case of a mere delivery of "mill oats" by interstate shipment for personal use in this state, then several legal inquiries might arise, such as these: Is the name "mill oats," in view of the history shown in the record, deceptive and misleading, within the meaning of the oleomargerine cases? Plumley v. Massachusetts, 155 U. S. 476, 479, 15 S. Ct. 154, 39 L. Ed. 223.

How and by whom is the question whether a new grain or seed introduced into interstate commerce is the legitimate subject of such commerce to be determined before Congress has taken cognizance and made regulations? Has the individual interested in promoting the sale, or the state, under its police power to provide for the safety of its inhabitants, the right to determine whether it is fit for the use intended, or whether it will introduce into the state a weed pest to infest its agricultural soils? Light on this inquiry may be found in the numerous cases involving inspection and quarantine laws, as well as Schollenberger v. Pennsylvania, 171 U. S. 29, 18 S. Ct. 757, 43 L. Ed. 49. But this case does not involve these inquiries. The proceeding is based upon the charge that these "mill oats" were being sold, exposed, or offered for sale in this state.

[18] The power of the state to regulate internal commerce is as plenary as that of Congress to regulate interstate commerce. It is exclusive in that it is an element of sovereignty never granted to Congress. The two classes of commerce may be and are often so interrelated that much study is required to distinguish between regulations so affecting interstate commerce as to be within the exclusive power of Congress, express or implied.

It may be noted here that it does not appear that Congress has ever recognized "wild oats," sold under the name of "mill oats," as a subject of interstate commerce; but agencies created by Congress are co-operating to prevent the spread of the plant as a weed pest—action in harmony with the purposes of our state law.

[19] We are clear in the conviction that the inhibition of section 4, article 20, of our Agricultural Code, as applied to the sale or offering for sale of "mill oats" in this state, is, under the conditions disclosed in the record, within the police power of the state.

[20] All legislation forbidding the entry of an article into the internal commerce of a state tends to reduce the movement of the article into this state through channels of interstate commerce, and thus indirectly restrict such commerce. This does not deprive the state of the police power to protect its inhabitants by legislation of the character here involved. This brings us to the question whether appellant was selling or offering for sale these "mill oats," within the meaning of the statute.

[21] The case of Commonwealth v. Warren, 160 Mass. 533, 36 N. E. 308, involved a sale of adulterated milk, wherein a hotel keeper had furnished the milk as part of the meal included in his hotel bill. The court said:

"The milk bought by the witness Kelly was purchased by and delivered to him as a part of his breakfast, and was just as much a sale as if a specific price had been put upon it, or it had been bought and paid for by itself."

This case is directly in point here. "Sale" must be construed in the light of the evil intended to be suppressed. Feeding "mill oats" to live stock kept in a public feed stable for hire, and paid for as a part of the general charge for feed and other services, is a sale of "mill oats" within the meaning of the act.

We find no error in the decree.

Affirmed.

SOMERVILLE, THOMAS, and MILLER, JJ., concur.