(125 So. 387)

### STATE v. TOWN OF SPRINGVILLE.
#### (7 Div. 920.)

Supreme Court of Alabama.   Dec. 19, 1929.

Charlie C. McCall, Atty. Gen., for the State.

For statement of facts, see 125 So. 385.

Merrill & Jones, of Anniston, for appellant.

FOSTER, J. ■ One question on this appeal is the constitutionality of the act of the Legislature of Alabama, known as the "Highway Act," approved August 23, 1927 (Gen. Acts 1927, p. 348), to the extent that it include section 106, which is hereinafter particularly referred to. The Court of Appeals sustained the validity of the act in this respect, against the claim that section 106 is not germane to the subject expressed in the title. We concur in this conclusion, in view of our construction of this section as herein expressed. In addition to the citations in the opinion of the Court of Appeals, we refer to Gibson v. State, 214 Ala. 38, 106 So. 231, which related to the constitutionality of the Agricultural Code adopted by the Legislature of 1923 (Gen. Acts 1923, p. 399).

■ The opinion of the Court of Appeals shows that the fines collected by appellee, a small municipal corporation of less than 2,-000 in population, were for violations of an ordinance of the town adopted pursuant to the Highway Code. By section 77 of the Highway Act, local authorities are prohibited from passing any ordinance, rule, or regulation regulating motor vehicles or their speed *contrary to the provisions of the act.* They may therefore pass such speed ordinances as are consistent with the Highway Act, but cannot in all cases fix the limit of fines as high as those fixed in the act. By said section local authorities are expressly authorized to provide by ordinance for the regulation of traffic by officers or signal devices, fix one-way traffic regulations, processions, or assemblages, also the parking of vehicles, and speed in public parks. Certain appropriate signs, giving notice of ordinances, are required by section 100.

Section 106 of the Highway Act provides that all "fines, etc., collected upon conviction, etc., of any person charged with a violation of any of the *provisions of this article constituting a misdemeanor,* shall be within thirty days, etc., forwarded to the state treasurer." The fines collected in the instant case, we repeat, resulted from violations of a *town ordinance.*

Section 1945 of the Code provides that recorders of cities and towns have original and concurrent jurisdiction with county courts of all misdemeanors committed within the city or town. By section 1946, when the recorder tries a misdemeanor under a state law the limits of punishment are those fixed by the state law as to such crime, and not by an ordinance, nor the law fixing the limit of fines to be prescribed by ordinances. By section 1935 the recorder has full jurisdiction of criminal matters, as well as penalties for the violation of ordinances, known as quasi criminal matters.

This dual jurisdiction fixed by statute is referred to by the courts in many cases. State ex rel. Birmingham v. Fort, 164 Ala. 578, 51 So. 317; Thomas v. State, 13 Ala. App. 421, 69 So. 413, 416; McKinstry v. Tuscaloosa, 172 Ala. 344, 54 So. 629; Arzumanian v. Birmingham, 165 Ala. 374, 51 So. 645; Barron v. Anniston, 157 Ala. 399, 48 So. 58; Turner v. Lineville, 2 Ala. App. 454, 56 So. 603; Withers v. State, 36 Ala. 252. In the Thomas Case, supra, the court states that an averment that one was tried in the recorder's court on a charge of "a violation of a prohibition law," means the state law and not a city ordinance. In the Barron and McKinstry Cases, supra, it is shown that in one instance the charge is criminal, while in the other it is only quasi criminal. Montgomery v. Foster, 54 Ala. 62; Brown v. Mayor, etc., of Mobile, 23 Ala. 722. In the Turner Case, supra, the town had adopted a prohibition ordinance. Violations under it are as to fines limited by the terms of the ordinance, and not by the state law. The opinion points out the distinction between a proceeding in recorder's court for the violation of a state law and one for the violation of an ordinance covering the same matters as are embraced in the state law.

By section 1950 the mayor may remit fines imposed for the violation of ordinances, but no municipal officer may remit fines imposed by the recorder in the enforcement of state laws.

■ It has long been settled apparently in Alabama that a city or town may adopt an ordinance which makes "municipal offenses of the violation of the misdemeanor statutes of the state." Casteel v. Decatur, 215 Ala. 4, 109 So. 571; Sloss-Sheffield S. & I. Co. v. Smith, 175 Ala. 260, 57 So. 29, 30; Montgomery v. Davis, 15 Ala. App. 606, 74 So. 730; Fealy v. Birmingham, 15 Ala. App. 367, 73 So. 296.

■ It is also clear that, when such misdemeanor has not been made a municipal offense, the jurisdiction of the recorder extends only to its enforcement as a state case. Rosenberg v. Selma, 168 Ala. 195, 52 So. 742. In the early case of Mobile v. Allaire, 14 Ala. 400, this court expressed the distinction between an ordinance and a criminal statute in language which was approved in Costello v. Feagin, 162 Ala. 191, 50 So. 134, 135, as follows: "The object of the power conferred by the charter, and the purpose of the ordinance itself, was not to punish for an offense against the criminal justice of the country, but to provide a mere police regulation for the enforcement of good order and quiet within the limits of the corporation. So far as an offense has been committed against the public peace and morals, the corporate authorities have no power to inflict punishment, and we are not informed that they have attempted to arrogate it. It is altogether immaterial whether the state tribunal has interfered and exercised its powers in bringing the defendant before it to answer for the assault and battery; for whether he has been there punished or acquitted is alike unimportant. The offenses against the corporation and the state, we have seen, are distinguishable, and wholly disconnected, and the prosecution at the suit of each proceeds upon a different hypothesis. The one contemplates the observance of the peace and good order of the city. The other has a more enlarged object in view—the maintenance of the peace and dignity of the state."

Continuing, this court further stated that "a city ordinance is not a public law of the state, but a local law of a particular corporation, made for its internal protection and good government. Moreover, if municipal cases before a mayor of a city or town were 'criminal prosecutions' in the sense of the Constitution, they would have to be carried on in the name of the state, and conclude 'against the peace and dignity of the same.'" (Language used in Withers Case, supra, pages 261, 262 of 36 Ala.)

■ Such proceedings are quasi criminal and upon review by this court are subject to the rules governing civil appeals. Casteel v. Decatur, 215 Ala. 4, 109 So. 571.

■ We have referred to section 106 as requiring certain fines to be paid to the state treasurer. Such requirement specifies no court. It only applies to such violations of that article of the act which (by its terms) *constitute a misdemeanor.*

The violation of a city ordinance is not a crime which could be called a misdemeanor created by the Highway Act. Without section 106, all fines collected for the violation of the criminal features of the act would go into the county fine and forfeiture fund. Section 4038, Code. Instead of to the county, it is provided in section 106 of the Highway Act that the fines for its violation go to the state treasurer. There would be no confusion at all as to the meaning of section 106, but for the proviso, which expressly reserves to cities of over 2,000 population fines derived from violations of city ordinances. It

was not necessary in this connection to refer to fines from violations of city ordinances, for they are not otherwise by the act withdrawn from the city. But the proviso retaining them for cities of over 2,000 population does not have the effect by implication of withdrawing such fines from cities of less than 2,000. It is not proper, we think, to say that such statute should by implication be held to contain a provision of this nature which is not so expressed.

We must conclude that the Legislature intended that the language used should be understood to have the meaning attributed to it by settled construction. And we cannot say that, because there is an unnecessary proviso whereby, in cities of over 2,000 population, fines derived from certain ordinance violations shall be paid into the treasury of the city, therefore thereby the Legislature enacted that in cities and towns of less population than 2,000 such fines shall not be paid into their treasury, but to the state treasury, when there is no such provision in the act.

It appears, therefore, that we are not in agreement with the Court of Appeals as to the meaning of section 106 of the Highway Act, and it is directed that the writ of certiorari issue to that court, and its judgment be reversed, and the cause remanded to it.

Certiorari awarded.

ANDERSON, C. J., and SAYRE and BOULDIN, JJ., concur.

BROWN, J., concurs in the result.

GARDNER and THOMAS, JJ., dissent.

BROWN, J. (concurring). There is nothing in the opinion of the court in Gibson v. State, 214 Ala. 38, 106 So. 231, 235, to justify the conclusion that the Legislature may disregard the general provisions of section 45 of the Constitution, prohibiting hodgepodge legislation, and include in one act a lot of incongruous original legislation, refer to it as a Code, and adopt it as such.

The pertinent provisions of section 45 are: "Each law shall contain but *one subject*, which shall be *clearly expressed* in its title, except general appropriation bills, general revenue bills, and *bills adopting a code, digest, or revision of statutes;* and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only," etc. (Italics supplied.)

That part of the exception or proviso italicized clearly refers to the "revising, digesting, and promulgating" provided for in section 85 of the Constitution, and to my mind it was never intended that each department, bureau, or state agency may prepare and have the Legislature adopt a special code for its use and guidance.

The holding in Gibson's Case is clear to the point that the act, denominated "the Agricultural Code," was governed by the general provisions of section 45, and not by the exception. To quote from the opinion: "The title to the act before us does not in terms purport to be one adopting a Code, but, on the contrary, one whose framers considered subject to the general rule, as evidenced by the title defining the subject in general terms, followed by a catalogue or synopsis of its several subdivisions. *It is not within the exception, and must stand or fall under the general rule declared in section 45.*" (Italics supplied.)

That observation is pertinent to the case in hand. For the state to recover the money arising from fines and forfeitures for violations of the municipal ordinance, it is necessary to construe section 106 of the act designated as "the Alabama Highway Code," as depriving towns under 2,000 inhabitants of the right to retain and appropriate to their own use such fines and forfeitures.

There is no affirmative statement to this effect in the act. The most that can be said in this respect is that by inference this was the legislative intent. To so construe this section of the act would render it repugnant to section 45 of the Constitution, for it is clear that there is nothing in the title of the act that suggests that the subject of fines and forfeitures accruing to municipal corporations from such source is to be dealt with in the act. The title to the act in question is far from being a general and comprehensive title; to the contrary, it is specific and narrow. Mobile Dry-Docks Co. v. Mobile, 146 Ala. 198, 40 So. 205, 3 L. R. A. (N. S.) 822, 9 Ann. Cas. 1229; State ex rel. Bassett et al. v. Nelson et al., 210 Ala. 663, 98 So. 715. It being clear that the subject of this litigation is not within the scope and purview of the act, the necessity for determining its constitutionality is not presented.

For these reasons, I concur in the conclusion that the state was not entitled to recover, that the writ of certiorari should be awarded, and the judgment of the Court of Appeals must be reversed.

THOMAS, J. (dissenting). Mr. Cooley makes pertinent observation of the nature and general powers of municipal corporations: That they "existed at common law and they had there but few powers beyond those of electing their officers and removing their persons. Such corporations might sue and be sued, might have a common seal, might hold property, personal and real, necessary for the corporate purposes, and might convey the same; might make by-laws necessary and proper, but as a rule the powers of these corporations are conferred expressly or impliedly and with a very few exceptions which are incidental powers from the charter of the

general law under which they exist is the measure of authority to be exercised, and the trend of the courts has been to confine these corporations to the exercise of those powers only which were granted by the charter, necessarily implied therefrom or that were incidental to the existence. Cooley, Const. Lim. 233, 234." Constitutions of Alabama, p. 154, note to § 89.

And Judge Mayfield remarks that "municipal corporations can hold and own property only for corporate purposes, but, as the Legislature has power to take from the corporation its charter, it would thereby be deprived of its property or corporate capacity to hold it; hence the Legislature has power, at least, to control the property of municipal corporations, but whether the state can directly take away the corporate property or convert it into another use, or take the property to itself, is a different question. It would seem that under our form of government, where a corporation holds property and has acquired vested rights to it, that the Legislature could not confiscate it to its own use; the public faith of the government is pledged against such action. Dartmouth College v. Woodward, 4 Wheat. 518 [4 L. Ed. 629]." Constitutions of Alabama, p. 154, note to § 89.

This court declared that the Legislature may abolish and dissolve a municipal corporation, authorize the appointment of trustees or administrative agency for assets, etc., in such way as not to amount to a "deprivation, permanent or temporary, of the people residing within the territorial limits of said corporation, of the power of local government as they had been accustomed to exercise it, nor a suspension or cessation of such government for any appreciable period of time; but, on the contrary, plainly contemplates the creation of another municipal corporation, to which substantially the same people and the same territory would be subject." Amy & Co. v. Selma, 77 Ala. 103. See, also, statements of legislative powers of and to municipalities contained in Hare v. Kennerly, 83 Ala. 608, 611, 3 So. 683, 685, and City of Ensley v. Simpson, 166 Ala. 366, 52 So. 61.

In Hare v. Kennerly, supra, Mr. Justice Somerville said that the framers of our Constitution were "cognizant of the principle that municipal corporations are the mere creatures of legislative power, established as political agencies for the more convenient administration of local government, with such powers as to taxation and other subjects, as the General Assembly may, from time to time, see fit to confer; and that their charters may be repealed, and their corporate existence destroyed, at the pleasure of the sovereignty that brought them into existence. Meriwether v. Garrett, 102 U. S. 472 [26 L. Ed. 197]; Amy v. Selma, 77 Ala. 103."

It was therefore ordained that the Legislature shall not have power to authorize any municipal corporation to pass any laws inconsistent with the general laws of the state. Section 89 of the Constitution of 1901. This provision was introduced into the Constitution of 1875 as section 50, art. 4; section 36, art. 4, Constitution 1868.

The power of municipal corporations to enact ordinances and make by-laws is limited by the federal and state Constitutions, by requiring that their ordinances must harmonize with the general laws and with the charters of the respective corporations, and that they should be reasonable and certain, in harmony with general principles of the common law and that of the state. Mayor of Huntsville v. Phelps, 27 Ala. 55; Holt v. City of Birmingham, 111 Ala. 369, 19 So. 735; Cooley Const. Lim., 240, 242.

When the power over the municipality is exercised, as was done in Amy & Co. v. Selma, supra, it will not offend the rule of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. Ed. 629; Port of Mobile v. Watson (Watson v. Port of Mobile), 116 U. S. 289, 6 S. Ct. 398, 29 L. Ed. 620; 47 A. L. R. 139, note. See, also, the cases of City of Huntsville v. Madison County, 166 Ala. 389, 52 So. 326, 139 Am. St. Rep. 45; Town of Lineville v. Gauntt, 20 Ala. App. 135, 101 So. 154; (as to limited powers of a municipality, being from statute is the creature of the state); Woco Pep Co. of Montgomery v. City of Montgomery, 213 Ala. 452, 105 So. 214; Ligon v. City of Gadsden, 21 Ala. App. 312, 107 So. 733. The assumption of the opinion, by Mr. Justice FOSTER, is to the like effect, together with the authorities he has cited and discussed.

With this understanding of the power of the Legislature over its municipalities, or due classifications thereof, it will no doubt be granted that the Legislature had the power to deny to a municipality the right to administer in its municipal or recorder's court any or a limited part or class of its criminal laws. And that is to say, to take from the municipality the right of administration of the laws of the public highways, or to permit the same, or to require payment of proceeds of all fines and forfeitures accruing therefrom, or in prosecution of misdemeanors committed thereon, or in relation thereto, under state laws. And the same power existed in the Legislature to so limit the municipal or recorder's court as to offenses or misdemeanors on or growing out of the public highways, whether under state law or municipal ordinances, and to require all fines and forfeitures arising or resulting therefrom to be paid into the state treasury, and to be credited to the funds of the state highway department for the maintenance of roads and bridges.

Has the Legislature done this in the general act "to provide a general system of leg-

islation pertaining to public roads, highways and bridges," etc.? General Acts 1927, pp. 348, 390, § 106. When the provisions of that section are interpreted under the context, and illustrated or aided by the ejusdem generis rule that obtains in this jurisdiction (State v. Western Union Tel. Co., 196 Ala. 570, 72 So. 99, and authorities), the legislative intent and exercise of its sovereign power are sufficiently expressed.

The several misdemeanors from which may result or accrue the "fines and forfeitures," made the subject of section 106, are indicated in other provisions of said act; and it is required that "all fines and forfeitures collected upon conviction or upon forfeiture of bail of any person charged with a violation of any of the provisions of this article constituting a misdemeanor shall be within thirty days after such fine or forfeiture is collected forwarded to the state treasurer." And the municipality is limited by the "proviso" which is as follows: "Provided that all fines and forfeitures collected by recorders' courts or other municipal courts for violation of ordinances, in cities and towns of over two thousand population according to the last or any subsequent census, whether for acts constituting violations of the provisions of this article or not, shall be paid into the treasury of such municipality in which the same was collected."

That was to say, in all cases in which municipal or recorder's courts act for violation of the aforestated class of misdemeanors, whether prosecuted under state law or city ordinances, the fines and forfeitures shall be paid into the state treasury. This is the explanation in the context and ejusdem generis rule of the words, "whether for acts constituting violations of the *provisions of this article or not*," shall not be paid into the treasury of such municipality in which the same was collected; but, required that *road violations and misdemeanors* under state law or city ordinances be paid to the designated fund in the state treasury. This is the obvious meaning, since the municipality may not ordain contrary to state law.

The administrative effect of the classification of municipalities of 2,000 or less population, according to tests prescribed, is that they may administer the public laws and reasonable ordinances pertaining thereto not inconsistent with state laws, for the benefit of maintenance of roads and bridges; but not as to said "fines and forfeitures" for that of the municipality. Mr. Justice GARDNER concurs in the foregoing.

I find no objection to the act, or section 106 thereof, as offensive to provisions of organic law. There was conformance to requirements of section 45 of the Constitution.

The enactment was original and in accord with Ballentyne v. Wickersham, 75 Ala. 533; and the many authorities to like effect.

It should be noted that this act was original in form, and not by way of compliance with section 85 of the Constitution, and was in conformity to the decision in Gibson v. State, 214 Ala. 38, 106 So. 231. A casual inspection of Shepard's Alabama Citations, the "Code of Alabama of 1923," "School Codes of 1924 and 1927," and the "Agricultural Code of 1927," may indicate or rather give warning that there is a tendency for extension of the right of the Legislature at "every subsequent period of twelve years, to make provision by law for revising, digesting, and promulgating the public statutes of this state, of a general nature, both civil and criminal," that was not intended by the framers of the Constitution. Section 85. The present act was not enacted by the Legislature as a Code, though it was designated therein as "the Alabama Highway Code." Its several provisions must be tested as those of any original enactment (section 45 et seq., Const.), and not as "revising, digesting, and promulgating *the public statutes* of this state." Section 85, Constitution.

I am in accord with the pertinent observations made by Mr. Justice BROWN on this point, contained in his concurring opinion, believing, as I do, that the purpose of section 85 of the Constitution for periodical revision and codification of the laws was to bring all of the laws into one body, so that the people may be advised as to what the law is.